STATE, Respondent, v. DOE, Appellant.

*No. 75–174. Argued January 31, 1977.—Decided June 1, 1977.*
(Also reported in 254 N.W.2d 210.)

For the appellant there was a brief by *Ted M. Warshafsky* and *Warshafsky, Rotter & Tarnoff, S. C.* and oral argument by *Ted M. Warshafsky,* all of Milwaukee.

For the respondent the cause was argued by *J. Douglas Haag,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

HEFFERNAN, J.   In a proceeding held in open court on June 9, 1975, William B. Chappie was adjudged guilty of contempt of court and was ordered confined to the county jail of Waukesha county for a period of sixty days.   The appeal is from that order of contempt and commitment.   The commitment to county jail was stayed by the circuit court pending disposition of the appeal by this court.

The order arose out of a John Doe proceeding conducted under the provisions of sec. 968.26, Stats.[1]

At the John Doe proceeding, presided over by Circuit Judge William E. Gramling, Chappie appeared on May 15, 1975, pursuant to a subpoena and in response to two subpoena duces tecum directing him to produce various documents and records.   He appeared with counsel, who was permitted, during the course of the proceedings which led to the contempt, to argue questions of law and also the reasonableness of the production order of the presiding judge.   In respect to the documents which

[1] "968.26   John Doe proceeding.   If a person complains to a judge that he has reason to believe that a crime has been committed within his jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him and may, and at the request of the district attorney shall, subpoena and examine other witnesses to ascertain whether a crime has been committed and by whom committed.   The extent to which the judge may proceed in such examination is within his discretion.   The examination may be adjourned and may be secret. Any witness examined under this section may have counsel present at the examination but such counsel shall not be allowed to examine his client, cross-examine other witnesses or argue before the judge.   If it appears probable from the testimony given that a crime has been committed and who committed it, the complaint shall be reduced to writing and signed and verified; and thereupon a warrant shall issue for the arrest of the accused.   Subject to s. 971.23, the record of such proceeding and the testimony taken shall not be open to inspection by anyone except the district attorney unless it is used by the prosecution at the preliminary hearing or the trial of the accused and then only to the extent that it is so used."

Chappie was ordered to produce, his counsel told the judge that such documents were not in his client's possession. This statement was accepted by the judge and by the assistant attorney general, who was representing the state at the John Doe.

The assistant attorney general then requested that the judge order Chappie to provide the court with handwriting exemplars. Counsel for Chappie argued that this was unreasonable inasmuch as Chappie, as a businessman, had frequently been obliged to sign his name to license applications, that such applications were matters of public record, and, hence, that it was unreasonable to require exemplars to be produced in a John Doe proceeding.

Counsel for Chappie also questioned the purpose for which the exemplars were sought. The assistant attorney general replied:

"They are obviously for the purpose of assisting in this investigation. . . . Comparisons might well be used, evidence might be used in other instances other than comparisons. . . . We are getting these samples solely for the purpose of comparison. They, at some later date in trial, might be used as evidence against the potential defendant, but we are not using them to secure any conflict against his interest."

The state denied that it could obtain the samples of handwriting elsewhere, and the court concluded that the purpose for which the exemplars were sought was for comparison only.

Counsel for the state and counsel for Chappie argued the constitutional propriety of the demand for handwriting exemplars.

The United States Supreme Court case of *United States v. Mara*, 410 U.S. 19 (1973), was relied upon by the state; and upon the basis of that case, the judge concluded that no constitutional right of Chappie would be violated by ordering the production of the handwriting exemplars.

In the closed John Doe proceedings, the trial judge ordered the execution or production of the exemplars, but, despite Chappie's refusal to comply, withheld an immediate finding of contempt. He did so because he concluded that a substantial constitutional question was presented. He stated that he wished to afford Chappie and his counsel the opportunity to have the constitutional issue—the possible infringement of Chappie's constitutional rights under the Fourth and Fifth Amendments—decided by the Wisconsin Supreme Court prior to the issuance of an order finding contempt. The finding of contempt was held in abeyance while Chappie sought a writ of prohibition from the Wisconsin Supreme Court to test the constitutionality of the order to produce the handwriting samples.

This court on May 22, 1975, declined to exercise its jurisdiction to issue the writ.

Further John Doe proceedings were held on May 29, 1975, and the presiding judge again stated that the refusal to furnish the handwriting exemplars would result in a finding of contempt. At this hearing, Chappie and his counsel waived irregularities in the proceedings, and a further hearing was scheduled to be held in open court on June 9, 1975. Following a hearing on that date, Judge Gramling, as judge of the circuit court for Waukesha county, in open court entered a finding of contempt and the sixty-day commitment set forth above.

Counsel for Chappie argued that an important question of constitutional law was involved and asked for a stay of execution of the commitment pending an appeal to this court. The circuit judge agreed and ordered a stay of execution, which has remained in effect during the course of this appeal.

We have extensively discussed the procedural background of this case, for it demonstrates that, under the John Doe procedure of the State of Wisconsin, a person who is the object of an investigation is entitled to sub-

stantial rights and due process protections. Under sec. 968.26, Stats., *supra,* a John Doe proceeding can be commenced only if a person complains to a judge that he has reason to believe that a crime has been committed within the jurisdiction. Before John Doe proceedings are commenced, the complainant is required to be examined under oath. It is within the discretion of the judge to determine whether such proceedings shall be instituted, and he also has the discretion to determine the scope and extent of the inquiry. Under the statute a witness is entitled to have counsel present. Although the statute does not, as a matter of right, permit counsel to argue or to examine his client, in the instant case Chappie's attorney, without restriction, was permitted to do both.

The document which may be finally issued as a result of a John Doe proceeding is a complaint, which must be reduced to writing. Such complaint has no more standing than a complaint issued by a magistrate on the verified oath of any informant, and it is subsequently subject to be tested on the question of probable cause at a preliminary examination prior to the filing of an information.

It is apparent from the recitation of the statutory provisions that John Doe proceedings, although held in secret, afford substantially more protection to a potential accused than does a grand jury. The proceedings of the John Doe are constantly under the scrutiny of a judge. Moreover, the document which comes out of the grand jury, the indictment, is proof of probable cause sufficient to bring the accused to trial.[2] In the John Doe proceedings, all that may issue is a complaint. Probable cause

[2] Sec. 971.02, Stats., Laws of 1973, ch. 45, purportedly grants Wisconsin grand jury indictees the right to a preliminary hearing. See Note, *Preliminary Examination Potential,* 58 Marq. L. Rev. 159, 164. There is, however, no such right granted a federal grand jury indictee, and it is federal cases upon which Chappie relies.

to bind over for arraignment and trial may still be tested in a preliminary examination.

We emphasize these additional protections afforded to a putative defendant in a John Doe, because the United States Supreme Court has repeatedly held that what the defendant was ordered to do here—produce handwriting exemplars—has been found not to be violative of constitutional rights in federal grand jury proceedings. If such order is not violative of constitutional rights in grand jury proceedings, we think it clear that similar rights are not infringed in the course of a Wisconsin John Doe.

The principal United States Supreme Court cases that we conclude are dispositive of Chappie's contention that his rights under the Fourth and Fifth Amendments to the Constitution of the United States are infringed by the John Doe order are *United States v. Dionisio,* 410 U.S. 1 (1973); *United States v. Mara,* 410 U.S. 19 (1973); and *Schmerber v. California,* 384 U.S. 757 (1966).

In *Dionisio,* an order of a federal grand jury required a witness to furnish voice exemplars. The United States Supreme Court reversed the decision of the Court of Appeals for the Seventh Circuit in *Dionisio v. United States,* 442 F.2d 276 (7th Cir. 1971), which held the demand for voice exemplars constituted a seizure and that, under the strictures of the Fourth Amendment, the reasonableness of the seizure must be demonstrated.

The Court of Appeals for the Seventh Circuit, however, rejected the contention that the compelled production of voice exemplars would violate the Fifth Amendment prohibition against self-incrimination. The United States Supreme Court agreed with the Seventh Circuit's position in that respect. The United States Supreme Court relied upon the authority of *Schmerber v. California,* 384 U.S.

757 (1966); *Gilbert v. California*, 388 U.S. 263 (1967); and *United States v. Wade*, 388 U.S. 218 (1967). The general rationale of these three cases is that stated in *Schmerber*, at 764:

"[T]he privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

In *Schmerber*, it was held that taking a blood sample involved no testimonial compulsion. In *Gilbert*, it was held that handwriting exemplars were not protected by the Fifth Amendment. In *Wade*, the compulsion to utter words in a lineup that were allegedly made by a robber in the course of a holdup was held non-testimonial.

These three cases, and the Supreme Court's holding in *Dionisio*, which relies upon them, unequivocally stand for the proposition that the taking of a handwriting exemplar does not implicate the Fifth Amendment, for the exemplar is not, *per se*, testimonial in nature, but only reveals the physical properties of the person's handwriting. *Dionisio* completely controls Chappie's contention that any privilege against self-incrimination would be infringed by the production of the handwriting exemplars.

In the instant case, Chappie was not asked to write anything of a testimonial nature. He was asked to write seven times with his right hand and twice with his left the following words: "There is an hour for every person to come to the aid of his country," "Mr. Douglas Cook," and "Chappie's Sports Centers."

Clearly, these penned statements were non-testimonial, and their nature confirms the state's professed purpose in securing them, that is, to use them by comparing the physical characteristics of the exemplars with questioned documents that were pertinent to the merits of the case, a purpose which the presiding judge at the John Doe found reasonable.

The *Dionisio* case also disposed of the Fourth Amendment claim and, in so doing, reversed the holding of the Court of Appeals for the Seventh Circuit that the production of the exemplars was an unlawful seizure. The United States Supreme Court held that the giving of voice exemplars pursuant to a subpoena did not constitute a seizure subject to the strictures of the Fourth Amendment. The Court said:

"The physical characteristics of a person's voice, its tone and manner, as opposed to the content of a specific conversation, are constantly exposed to the public. Like a man's facial characteristics, or *handwriting*, his voice is repeatedly produced for others to hear. No person can have a reasonable expectation that others will not know the sound of his voice, any more than he can reasonably expect that his face will be a mystery to the world." (Emphasis supplied.)

In taking that position, the United States Supreme Court relied upon *Katz v. United States,* 389 U.S. 347, 351 (1967), which held that the Fourth Amendment provides no protection for what a person routinely and knowingly exposes to the public.

*Dionisio* is particularly of interest in this case, because it not only fails to accept the rationale of the Seventh Circuit, which would have held the production of voice exemplars subject to the Fourth Amendment, but specifically relies upon, and follows, the reasoning of *United States v. John Doe (Schwartz),* 457 F.2d 895 (2d Cir. 1972), which involved, as does the instant case, the furnishing of handwriting exemplars. In *United States v. John Doe,* at 898, Judge Friendly, writing for the Court of Appeals for the Second Circuit, stated:

"Handwriting and voice exemplars fall on the side of the line where no reasonable expectation of privacy exists. Except for the rare recluse who chooses to live his life in complete solitude, in our daily lives we constantly speak and write, and while the content of a communica-

tion is entitled to Fourth Amendment protection, *Katz v. United States, supra,* the underlying identifying characteristics—the constant factor throughout both public and private communications—are open for all to see or hear. There is no basis for constructing a wall of privacy against the grand jury which does not exist in casual contacts with strangers. Hence no intrusion into an individual's privacy results from compelled execution of handwriting or voice exemplars . . . ."

In *Dionisio,* the United States Supreme Court resolved the conflict between the Seventh Circuit in *Dionisio* and the Second Circuit in *John Doe.* It approved Judge Friendly's reasoning in the Second Circuit's opinion, thus unequivocally approving the holding that the furnishing of handwriting and voice exemplars in the course of grand jury proceedings violated neither the Fourth nor the Fifth Amendments to the Constitution.

Companion to the United States Supreme Court case of *Dionisio* is *United States v. Mara,* 410 U.S. 19. This was the case relied upon by the trial judge in the instant case in ordering Chappie to execute handwriting exemplars. We conclude that his reliance was appropriate. *Mara* was also an appeal from the Seventh Circuit, and in its decision reported at 454 F.2d 580 (7th Cir. 1971), relying on its own earlier opinion in *Dionisio v. United States,* it found that a directive to furnish handwriting and print exemplars constituted an unreasonable search and seizure. *Mara,* like *Dionisio,* was reversed by the United States Supreme Court. The United States Supreme Court's opinion in *Mara* specifically incorporated the rationale of the companion case of *Dionisio.* The Supreme Court stated:

"We have held today in *Dionisio,* that a grand jury subpoena is not a 'seizure' within the meaning of the Fourth Amendment and, further, that that Amendment is not violated by a grand jury directive compelling production of 'physical characteristics' that are 'constantly exposed to the public' . . . . Handwriting, like speech,

is repeatedly shown to the public, and there is no more expectation of privacy in the physical characteristics of a person's script than there is in the tone of his voice . . . . Consequently the Government was under no obligation here, any more than in *Dionisio*, to make a preliminary showing of 'reasonableness.' " (*Mara*, at 21–22)

■The amalgam of the holdings of the Supreme Court cases of *Dionisio, Mara,* and *Schmerber* is that an order to produce handwriting exemplars before a grand jury that are of a nontestimonial nature is prohibited neither by the Fourth Amendment nor the Fifth Amendment, and indeed those cases hold—beyond the ambit of this case—that a witness may be compelled to produce exemplars not only of his handwriting and voice, but, in addition, his fingerprints or other nonintrusive or nondegrading physical manifestations or characteristics which are generally open to public view.

These cases also hold that, where an individual does not have a reasonable expectation of privacy, he may be compelled to produce before the grand jury that which he offers to daily public perusal, with no preliminary showing that the need is reasonable, necessary, relevant, or unavailable elsewhere.

We think it beyond argument that that which is permitted of a grand jury is equally permissible under the John Doe proceedings of the State of Wisconsin. While a grand jury does indeed furnish protection against the prosecutorial whims of the executive and, therefore, affords a substantial protection against unbridled prosecutorial license, the grand jury is not subject to the constant scrutiny of a judicial officer as is the John Doe. Anyone familiar with the functions of the grand jury or who has dealt with it knows the hazards of a run-away grand jury, which can go beyond the restraints of the prosecutor, the executive, or of the judiciary. Such haz-

ards do not exist in the Wisconsin John Doe. While John Doe proceedings can be abused, the document produced by a John Doe does not *ipso facto* force the defendant to trial. The complaint which emanates from it is issued under the aegis of a judge but nevertheless must subsequently stand the scrutiny of an open court inspection in an adversary proceeding at the preliminary examination as a prerequisite to the filing of an information, arraignment, and trial.

We accordingly conclude that no restrictions of the Fourth and Fifth Amendments mandated upon this state by the Fourteenth Amendment preclude the enforcement of the order for handwriting exemplars directed by the presiding judge in the instant John Doe proceedings.

Although the brief of counsel for Chappie filed in this court seeks to distinguish the *Dionisio-Mara-Schmerber* cases, it was acknowledged at oral argument that those cases are controlling, but it was urged that this court should afford greater constitutional rights to a defendant appearing before a grand jury or John Doe proceeding under the Constitution of the State of Wisconsin than is afforded by the United States Constitution.

The position of Justices Douglas and Marshall which appears in the dissents to *Mara* is urged as the Wisconsin constitutional law that should be adopted by this court.

Certainly, it is the prerogative of the State of Wisconsin to afford greater protection to the liberties of persons within its boundaries under the Wisconsin Constitution than is mandated by the United States Supreme Court under the Fourteenth Amendment. See William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights,* 90 Harv. L. Rev. 489 (January 1977). This court has never hesitated to do so. Two significant examples come to mind.

This court in *Carpenter v. Dane County,* 9 Wis. 249 (*274) (1859), one hundred two years before the United

States Supreme Court's pronouncement in *Gideon v. Wainwright,* 372 U.S. 335 (1963), announced as a principle of constitutional law that a defendant in a felony case is entitled to have counsel furnished at the state's expense. In *Hoyer v. State,* 180 Wis. 407, 193 N.W. 89 (1923), this court adopted, as a protection to persons within its boundaries, the rule that excludes evidence secured by unlawful searches and seizures. That decision antedated by almost forty years the United States Supreme Court's mandate in *Mapp v. Ohio,* 367 U.S. 643 (1961), which applied the Fourth Amendment exclusionary rule to the states.

This court has demonstrated that it will not be bound by the minimums which are imposed by the Supreme Court of the United States if it is the judgment of this court that the Constitution of Wisconsin and the laws of this state require that greater protection of citizens' liberties ought to be afforded. But the path which the appellant urges us to follow, that of applying Wisconsin constitutional law to proceedings before a grand jury or a John Doe, is one that leads not to the result which appellant desires—that of full application of the Fourth and Fifth Amendments to the instant situation—but to a result that is consistent with and antedates the United States Supreme Court's holdings in *Dionisio, Mara,* and *Schmerber.* The philosophy and rationale of Wisconsin cases for over seventy years leads inevitably to the holdings of the *Dionisio-Mara-Schmerber* trilogy. The consistent rationale of this court prior to *Dionisio, Mara,* and *Schmerber* is consistent with the majority opinions in those cases; and we have specifically, in analogous cases, rejected the rationale of the dissenters and the rationale of the Seventh Circuit in *Dionisio.*

In *Thornton v. State,* 117 Wis. 338, 93 N.W. 1107 (1903), a defendant in custody on a rape charge was compelled to surrender his shoe so that it might be compared with a footprint left at the scene. That opinion

reasoned that such compulsory surrender did not violate the defendant's privilege against self-incrimination. In addition, the opinion was precursor of the "reasonable expectation of privacy doctrine" set forth explicitly seventy years later by the United States Supreme Court in *Katz, supra,* and *Terry v. Ohio,* 392 U.S. 1 (1968). The Wisconsin court in 1903 stated that what one regularly exposed to public observation could not be protected by either the Fourth Amendment or the Wisconsin constitutional prohibition against unreasonable searches and seizures. This court said:

"While, however, the constitution, in perpetuation of the rules of the common law, must be held to protect one from being compelled to disclose any criminatory fact, either by words or by surrender of papers, documents, or other effects, which, in the nature of things, he has a right to keep secret, it cannot be held to exclude those sources of evidence which have always been recognized as legitimate. Because a fact pertains to or is connected with the person of an accused, it is not necessarily secret. Of course, the personal appearance of one, his obvious physical characteristics and his attire, are things usually open to observation by others, and from time immemorial testimony by those who have observed them has been received and has been considered in no wise to invade the privacy of the person observed. . . . That a man's head is bald is a fact ordinarily observed and known by many who come in contact with him. . . . May he not, when in custody, be required to remove his hat and thus give the opportunity of observation which has commonly existed for those coming in contact with him?" (at 342–43)

In *State v. Kroening,* 274 Wis. 266, 79 N.W.2d 810, 80 N.W.2d 816 (1956), this court concluded that the taking of a blood sample was not testimonial in nature and, accordingly, did not violate the constitutional rule against self-incrimination—although, under the facts of this case, we held that the circumstances of the taking of a blood sample from a semi-conscious suspect, who had not been

arrested and who had not given his consent, constituted an unlawful search.

In *Barron v. Covey*, 271 Wis. 10, 12, 72 N.W.2d 387 (1955), the court, quoting from *Holt v. United States*, 218 U.S. 245, 252 (1910), stated:

" '[T]he prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort *communications* from him, not an exclusion of his body as evidence when it may be material.' " (Emphasis supplied.)

The court in *Barron*, also relying on 8 Wigmore, *Evidence* (3d ed.), sec. 2265, p. 374, stated: "[The] constitutional provisions against self-incrimination are confined to testimonial utterances." The same authority, Wigmore, was relied upon by the United States Supreme Court in reaching its parallel conclusions.

In *State v. Tew*, 54 Wis.2d 361, 195 N.W.2d 615 (1972), this court relied on the rationale of *Schmerber* and said:

"[A] defendant has no fifth amendment right to refuse to be fingerprinted, as the fifth amendment privilege extends only to oral testimonial activity, and not to fingerprinting, photographing, or measuring the defendant." (at 363)

Holdings based on the same rationale appear in *Waukesha v. Godfrey*, 41 Wis.2d 401, 164 N.W.2d 314 (1969), and *State v. Driver*, 59 Wis.2d 35, 207 N.W.2d 850 (1973). In the latter case, which involved the taking of a breath sample, the court specifically relied upon *Schmerber, supra; Wade, supra; Gilbert, supra,* and *Dionisio, supra.* Thus, this court has rejected the basic rationale of the dissenters in the United States Supreme Court cases of *Dionisio* and *Mara.* It is equally clear, consistent with three-quarters of a century of Wisconsin constitutional law, that this court, even absent the con-

trolling United States Supreme Court cases of *Dionisio* and *Mara,* would have almost inevitably come to the identical result.

We, accordingly, conclude that the path which the appellant would like us to take, that offered by the dissenters in *Dionisio* and *Mara,* is closed to us by a venerable line of contrary Wisconsin constitutional law. Even were we to view the proposition *ab initio,* it seems rather apparent that the compelled production of handwriting exemplars or other physical characteristics does not even arguably implicate the constitutional restriction against self-incrimination contained in the Wisconsin Constitution. Nor would we conclude that that which is habitually exposed to the public scrutiny, such as handwriting, could be the subject of a seizure violative of the Constitution of Wisconsin.

We therefore hold that the order of the presiding judge at the John Doe proceeding directing William Chappie to produce specified handwriting exemplars violated no constitutional rights of Chappie and that Chappie's refusal to comply with that lawful order constituted contempt.

Accordingly, we affirm that order and direct that the cause be remanded to the circuit court for Waukesha county, with the direction that the commitment ordered by the court be executed at such time as the court may order.

*By the Court.*—Order affirmed.