STATE, Plaintiff in error, v. STARKE, Defendant in error.

*No. 76-727-CR. Argued December 1, 1977.—
Decided January 3, 1978.*
(Also reported in 260 N.W.2d 739.)

400

For the plaintiff in error the cause was argued by *Edward S. Marion,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant in error there was a brief by *Willis B. Swartwout III, Gary L. Heiber* and *Swartwout & Heiber,* of New Berlin, and oral argument by *Willis B. Swartwout III.*

CONNOR T. HANSEN, J.   The defendant, Chief of Police of the village of Pewaukee, was arrested on August 6, 1976, in his office by Lieutenant James Chase, Detective John Willert and two other detectives, all of the Waukesha county sheriff's department. The arrest was made pursuant to a complaint and warrant dated the same day, which charged the defendant in error with the following four offenses: (1) Theft, contrary to sec. 943.-20(1)(a), Stats.; (2) procuring and causing to be presented a false and fraudulent insurance claim, contrary to secs. 943.395 and 939.05; (3) obstructing justice, contrary to sec. 946.12(3); and (4) misconduct in public office, contrary to sec. 946.12(3).

The fourth count concerned a warrant issued December 12, 1975, for the arrest of Starke's niece, one Linda Edwards, on a charge of speeding. The complaint alleges that although Starke told two officers that the speeding fine had been paid and the matter had been settled, a check of the court records indicated that the warrant was active and had not been served, and that the fine had not been paid. According to the complaint, Linda Edwards had been seen at Starke's home on several occasions but had not been arrested as required by law, and officers of the Pewaukee police department did not feel that they could apprehend Linda Edwards in view of her relationship to the defendant.

In the course of his arrest, the defendant read or was read the charges against him, including the fourth charge, the alleged failure to execute the Linda Edwards arrest warrant. At that point the defendant removed from his desk and exhibited to the officers a warrant for the arrest of Linda Edwards. The defendant testified that he offered the warrant to the officers, and they refused it; they denied that the warrant was offered to them.

In any event, Starke then returned the warrant to a drawer on the right hand side of the desk, closed the drawer and locked it before being taken to the sheriff's department.

Approximately three hours later, at about 7 p.m., Lieutenant James Chase obtained a search warrant authorizing the search of "[t]he police department offices located at the village hall. . . in the Village of Pewaukee . . ." for "[o]fficial papers, warrants and other property belonging to the Village of Pewaukee," as evidence of misconduct in public office, contrary to sec. 946.12, Stats.

This search warrant was issued by a circuit judge on the basis of an affidavit executed by Lieutenant Chase. This affidavit stated that an investigation of the defendant's conduct as chief of police had indicated that laws had been violated; that evidence of such violations might be found in the defendant's desk and files; that when the defendant was arrested, he had produced a certified copy of a warrant which was the subject of a pending criminal charge against him, and had locked the warrant in his desk; and that the defendant had refused the demands of the Pewaukee village trustees and village police committee that he surrender his keys.

The search warrant was executed at approximately 8 p.m. Upon opening the desk drawer, the officers recovered the Linda Edwards warrant and an arrest warrant for Kenneth E. Hanson. They then proceeded to inventory other items in the desk, files and office, and seized some thirty-six items from the desk, including an envelope containing money.

On August 13, 1976, a second search warrant was issued, authorizing a search of the Waukesha County Marine Bank, Pewaukee Branch, for ". . . [a] checking account having records of deposits and pay-outs on monies which were properly the funds of the Village of Pewaukee from the account of Murill Starke. . ."

This warrant was supported by the affidavit of Waukesha county sheriff's Detective John R. Willert.

Willert's affidavit stated (1) that he had participated in a criminal investigation of the defendant; (2) that it had been learned that the defendant, using police department stationery, had ordered five revolvers for the use of the village; (3) that the revolvers were sold to the defendant at police department prices, with a federal tax exemption; (4) that the defendant had sold one of the revolvers to a private citizen and had received a check for $155, some $53.60 more than the price of the revolver; (5) that the check had been payable to the defendant and had been endorsed and cashed by him; (6) that the affiant was in possession of a copy of this check; (7) that several identified checks executed by the Waukesha County Technical Institute to the order of the chief of police had been endorsed by the defendant personally and not by the village clerk-treasurer, the rightful recipient of the funds; (8) that police department books were being audited, and (9) that the banking records were needed to complete the audit and the investigation of possible misappropriation of funds. The return on this second warrant stated that examination of the defendant's bank records indicated that two deposits constituted possible evidence.

On September 2, 1976, an amended complaint was filed charging the defendant with nine counts of misconduct in office. A second amended complaint was filed on November 24, 1976. This complaint charged thirteen counts of misconduct in office.

In January, 1977, a special prosecutor was appointed, a request for substitution of judge was granted, the defendant waived preliminary examination, and the information was filed.

Defendant then moved to suppress the evidence obtained in the two searches and the "products" of the

searches. At the hearing on the motion, on April 7, 1977, the trial court heard testimony regarding the issuance and execution of the first warrant, withholding decision on the state's argument that it would be improper to supplement or go behind the record which had been before the examining magistrate. No testimony was taken with regard to the second warrant. The trial court subsequently ruled that a reviewing court must restrict its inquiry to the record before the magistrate at the time of issuance of a search warrant, thereby indicating that it had disregarded such testimony given at the hearing.[1]

On April 22, 1977, the trial court granted the suppression motion. The court found that the first search warrant was not supported by probable cause because the supporting affidavit did not state that the affiant had seen the Linda Edwards warrant nor did it state the nature of the pending charges or their relationship to the items sought. The trial court considered a reference in the affidavit to a second warrant observed by the affiant to be irrelevant. The court also indicated that allegations regarding the defendant's refusal to surrender his keys were not adequately substantiated. Further, the court held that the warrant was overbroad in its description of property to be seized and in permitting a search of the entire office of the defendant.

With regard to the second warrant, the court considered the supporting affidavit inadequate because it did not state how the affiant had obtained the copy of the check used to pay for the revolver, how additional checks represented criminal activity, why it was sig-

---

[1] This testimony included the defendant's statement that he had removed the Linda Edwards arrest warrant and other warrants from his desk and had offered them to Lieutenant Chase; that Chase did not take them; and that the defendant returned them to his desk and locked it. In addition, Chase and Detective Willert testified that the defendant exhibited the Linda Edwards warrant but did not offer it to them.

nificant that the checks had not been endorsed by the village clerk, which of the defendant's bank accounts was to be searched, or why the checks were significant.

The trial court stated that its suppression ruling extended not only to the evidence seized in the two searches, but also to "everything which was obtained" after the August 6, 1976, search warrant. After a recess, the state moved for a continuance to allow it to appeal from the suppression order. This motion was denied. In view of these rulings, the prosecutor stated that he could not present a prima facie case and was unable to proceed. At this point the defendant's counsel moved to dismiss the prosecution, and the motion was granted.

On the basis of these rulings, an order dismissing the prosecution and discharging the defendant was entered on April 22, 1977. A second order was entered May 6, 1977, suppressing the evidence obtained pursuant to the two search warrants and all evidence obtained subsequent to execution of the first warrant. A third order, also entered May 6, 1977, denied the state's motion for a continuance. Writs of error issued to review these orders.

Other facts are set forth in consideration of the issues which are:

1. Did the trial court err in suppressing the evidence seized pursuant to the search warrant of August 6, 1976?

2. Did the trial court err in suppressing the evidence seized pursuant to the search warrant of August 13, 1976?

3. Did the trial court err in suppressing all evidence obtained by the state subsequent to the execution of the first search warrant?

4. Did the trial court abuse its discretion in denying the request for a continuance?

5. Did the trial court err in dismissing the action?

Before considering the issues, we first observe that it is our conclusion that this case must be remanded for an evidentiary hearing.

### SEARCH WARRANT OF AUGUST 6, 1976.

This search warrant was directed to the office of the defendant, Chief of Police. At the outset, the state argues that because of the facts and circumstances of the arrest of the defendant, no such warrant was required to search his desk and files. However, because of our ultimate disposition of the issue, we do not address this argument and express no judgment on its merits.

A search warrant was actually issued, and the critical question is whether probable cause was established for its issuance. In reviewing the sufficiency of the evidence to support issuance of a search warrant, this court is confined to the record established before the magistrate at the time the warrant was issued. *Scott v. State,* 73 Wis.2d 504, 508, 243 N.W.2d 215 (1976); *Aguilar v. Texas,* 378 U.S. 108, 109, *fn.* 1, 84 Sup. Ct. 1509, 12 L. Ed.2d 723 (1964).

On review it must appear that the magistrate was apprised of sufficient facts to excite an honest belief in a reasonable mind that the objects sought are linked with the commission of a crime, and that the objects sought will be found in the place to be searched. *See: Morales v. State,* 44 Wis.2d 96, 101, 170 N.W.2d 684 (1969); *State v. Harris,* 256 Wis. 93, 39 N.W.2d 912 (1949).

The record in the instant case does not establish that the magistrate had knowledge of the contents of the criminal complaint at the time the warrant was issued. The record indicates that the warrant was signed in the magistrate's home, in the presence of Lieutenant Chase, one of the arresting officers; the district attorney; and a village of Pewaukee trustee. Chase testified that the "sole substance" upon which the warrant was issued was his supporting affidavit. Therefore this court's inquiry is limited to the affidavit.

The search warrant was sought in order to obtain evidence of misconduct in public office. The affidavit stated, among other things, that:

". . . At the time of his arrest on charges now pending Murill Starke did show one certified copy of a warrant which was the subject of one of the criminal charges which was then locked in the police chief's desk in the police department in the Village Hall described herein. . . ."

The trial court considered this allegation defective for failure to state that it was based on the affiant's personal observation. This conclusion misconceives the showing necessary to establish probable cause for issuance of a search warrant.

The fourth amendment does not deny law enforcement officers the support of the usual inferences which reasonable men draw from evidence, although it requires that such inferences be drawn by a neutral and detached magistrate. *United States v. Ventresca,* 380 U.S. 102, 106, 85 Sup. Ct. 741, 13 L. Ed.2d 684 (1965); *Johnson v. United States,* 333 U.S. 10, 13, 14, 68 Sup. Ct. 367, 92 L. Ed. 436 (1948); *State v. Beal,* 40 Wis.2d 607, 613, 162 N.W.2d 640 (1968). *See: Scott v. State, supra,* at 510, 511 (approving a magistrate's reliance upon "the only logical inference to be drawn from [a] statement" in the complaint).

Only one inference can be drawn from the affiant's statement that at the time of his arrest the defendant displayed a warrant. That inference is that the defendant's actions were observed by at least one of the arresting officers, if not by the affiant himself.

In *United States v. Ventresca, supra,* the Supreme Court reversed a Court of Appeals decision that an affidavit was insufficient to establish probable cause for issuance of a search warrant. Although the affidavit failed to indicate whether the allegations were based

on the affiant's knowledge or on hearsay, the Supreme Court drew what it considered the necessary inference that the affidavit was based on the observations of the affiant or of his fellow Internal Revenue Service investigators. These allegations were sufficient to show probable cause, the court held, because:

". . . [o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *United States v. Ventresca, supra,* at 111.

Affidavits for search warrants need not be drafted with elaborate specificity. *Scott v. State, supra,* at 510. Nor should a policeman's affidavit " 'be judged as an entry in an essay contest.' " *United States v. Harris,* 403 U.S. 573, 579, 91 Sup. Ct. 2075, 2080, 29 L. Ed.2d 723 (1971) :

". . . [A]ffidavits for search warrants, . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.
". . . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. . . ." *United States v. Ventresca, supra,* at 108, 109; *United States v. De Cesaro* (7th Cir. 1974), 502 Fed.2d 604.

The probable cause necessary to support issuance of a search warrant is less than the evidence required in a preliminary examination. *State ex rel. Furlong v. Waukesha County Court,* 47 Wis.2d 515, 522, 177 N.W.2d 333 (1970); *State v. Beal, supra,* at 613, 614; *United States v. Ventresca, supra,* at 107. Because the informed and deliberate determinations of a neutral magistrate are to be preferred over the hurried decisions of arresting officers, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants. . . ." *United States v. Ventresca, supra,* at 109.

In light of these considerations, it cannot be said that the affidavit under review was insufficient to support the issuance of a warrant to search the defendant's desk for the Linda Edwards warrant. The affidavit said that evidence was sought in regard to alleged misconduct in office, contrary to sec. 946.12, Stats.; it referred to Starke's "arrest on charges now pending," and said that at the time of his arrest he had locked in his desk "one certified copy of a warrant which was the subject of one of the criminal charges. . . ."

The allegation that charges were pending against the defendant and that he had been arrested clearly gave rise to a sufficient implication that a crime had been committed. The allegation that he had exhibited a warrant which was the subject of one of the charges was sufficient to link the warrant to the alleged crime, and the allegation that the warrant had been locked in the desk was ample basis to believe the warrant would be found there.

The officers in this case did what the constitution prefers. They secured a warrant from a judicial officer on the basis of a sworn affidavit which, however inartfully drawn, showed probable cause to search the desk

for the Linda Edwards warrant. The order suppressing this warrant must therefore be modified.

A second arrest warrant was seized in the search of the desk drawer which contained the Linda Edwards warrant. The return on the search warrant shows that this warrant was for the arrest of Kenneth E. Hanson, and that the desk also contained an envelope containing $55 in cash and marked "Ken Hanson, partial Payment."

The affidavit in support of the search warrant included a statement that "[a]nother warrant which may constitute evidence of misconduct was known and seen in the chief's desk." The only reasonable inference from these statements is that the arresting officers saw both the Edwards warrant and the warrant above mentioned in the desk of the defendant at the time of his arrest. The affidavit of Lieutenant Chase states that the documents sought might constitute evidence of the crime of misconduct in public office contrary to sec. 946.12, Stats. The affidavit informed the issuing magistrate that an investigation of the defendant's conduct had been conducted; that the defendant had been arrested on the pending charges; and that a warrant "which was the subject of one of the criminal charges" was shown and then locked in the defendant's desk. We have no difficulty in arriving at the conclusion that the search warrant was properly issued and constituted valid authority to search the desk and seize the two warrants which the officers had seen at the time of the arrest of the defendant.

The trial court also found the search warrant was overbroad and therefore fatally defective.

Both the fourth amendment of the federal constitution and art. I, sec. 11 of the Wisconsin Constitution require that a search warrant particularly describe the place to be searched and the things to be seized. *Stanford v.*

*Texas,* 379 U.S. 476, 481, 85 Sup. Ct. 506, 13 L. Ed.2d 431 (1965); *Myers v. State,* 60 Wis.2d 248, 260, 261, 208 N.W.2d 311 (1973). This requirement is aimed at the "general warrant" abhorrent to the colonists and is intended to prevent general, exploratory rummaging through a person's papers and effects. *State v. Pires,* 55 Wis.2d 597, 606, 201 N.W.2d 153 (1972).

The defendant argues that the terms of the instant warrant violate this requirement. The warrant authorized a search of "[t]he police department offices located at the village hall . . . in the Village of Pewaukee . . ." for "[o]fficial papers, warrants and other property belonging to the Village of Pewaukee." Under certain circumstances such broad language might be said to be constitutionally overbroad.

However, there are two reasons why, on the facts of this case, this language does not invalidate the search. First, to the extent that the warrant authorized inspection of the records and documents of the police department not in the defendant's control, the warrant was unnecessary. These public records would have been accessible to the investigating officers without a warrant. Nor could the defendant have had an expectation of privacy with regard to such records.

More important, it appears that, despite the terms of the warrant, no generalized search of the police station was conducted. However, the search was extended to the defendant's locked file cabinet. It appears that no probable cause for a search of these files had been established. For this reason, any evidence seized from the files would properly be subject to suppression.

However, none of the thirty-six items seized was taken from the files; all were found in the desk. On the facts of this case, therefore, the otherwise overbroad language of the warrant was of no practical consequence to the defendant. For this reason, overbreadth was not a proper ground for suppression of the evidence seized.

Thirty-six items were seized in the search of defendant's desk and all were suppressed by the trial court. A search may not be continued after the objects identified in the search warrant have been located and seized. *United States v. Odland* (7th Cir. 1974), 502 Fed.2d 148, *certiorari denied* 419 U.S. 1088. On appeal, the state does not contest the suppression of thirty-four of the items seized. This concession was proper because it appears from the record that these items were seized after the two arrest warrants had been recovered.

*SEARCH WARRANT OF AUGUST 13, 1976.*

This, the second search warrant issued, authorized the search of the records of the Waukesha County Marine Bank, Pewaukee Branch, for certain specified activity in the accounts of the defendant at that bank.

On review, the state first argues that no search warrant was required to examine the accounts of the defendant at the Pewaukee branch bank. This argument is based upon the holding of the United States Supreme Court in *United States v. Miller,* 425 U.S. 435, 96 Sup. Ct. 1619, 48 L. Ed.2d 71 (1976). In *Miller,* two banks, pursuant to subpoenas *duces tecum,* had provided government investigators with records relating to a depositor's accounts. The depositor moved to suppress these records when they were offered as evidence against him in a subsequent prosecution. The Supreme Court held that the bank's production of the records under compulsion of legal process did not intrude upon any protected zone of privacy of the depositor, under the fourth amendment of the United States Constitution.

The defendant emphasizes that the *Miller Case* was decided under the fourth amendment of the United States Constitution and does not control this court's construction of art. I, sec. 11 of the Wisconsin Constitution. The defendant urges the court to construe art. I, sec. 11, as prohibiting inspection of a bank depositor's records at his bank without a valid search warrant. We do not

reach this argument. On the facts presented, we conclude that the search under review was conducted pursuant to a valid warrant. It is therefore unnecessary to determine whether a warrantless search would have been objectionable.

The second warrant was supported by an affidavit of Detective John Willert. The affiant alleged that the defendant, Starke, had used police department stationery to order five guns, stating that they were for village of Pewaukee use, and that he had received police department prices and a federal tax exemption. The affidavit stated that Starke later sold one of these guns at a profit, to a private citizen; that he endorsed and cashed the citizen's check for the purchase price; and that the check was made payable to Starke. The affidavit stated that a copy of this check was in hands of the affiant. This affidavit was offered to secure a warrant for evidence of felony theft and misconduct in public office, contrary to secs. 943.20(1)(b) and 946.12, Stats.

The affidavit then refers to a series of checks from the Waukesha County Technical Institute made out to the order of "Chief Starke," "Pewaukee Chief of Police" and "Chief of Police, Pewaukee," which had been endorsed by Starke rather than the village clerk-treasurer. The affidavit states that the clerk-treasurer "should be the recipient of all funds paid under the above checks," and that Starke's bank records were needed to complete an audit of the police department books and to determine whether funds had been misappropriated. The affidavit does not specifically allege that it was unlawful for the checks to be endorsed by Starke, that the funds were deposited in his account, or that the funds were not received by the village.

The allegations in an affidavit for a search warrant need not be drawn with great specificity, need not prove the elements of a crime, and they need not be competent admissible evidence in a preliminary examination. *Scott*

*v. State, supra,* at 510; *State ex rel. Furlong v. Waukesha County Court, supra,* at 522.

Although the defendant argues that the affidavit is inadequate for failure to allege that the funds were deposited in Starke's personal account, the state could not be expected to make such an allegation until the bank records had been examined. In view of the fact that the affidavit had alleged at least one other act of misappropriation of public property and had alleged that Starke was not a proper recipient of the funds, and that the records were necessary to determine whether funds had been misappropriated, the magistrate could reasonably have drawn the inference that funds had been misappropriated and that Starke's bank records could provide evidence of the crime.

We believe the evidence presented to the magistrate was more than sufficient to excite an honest belief in the mind of the magistrate that a crime had been committed and that evidence of that crime could be found by examining the defendant's deposit records. There was therefore probable cause for issuance of the second search warrant.

The defendant also argues that the warrant should have been limited to specific identified transactions. Such an approach would unreasonably restrict the state's investigation and might well frustrate its purpose. To determine whether funds had been misappropriated, it was necessary for the state not only to attempt to identify improper deposits, but also to determine whether any such deposits were subsequently repaid to the village. The state could not reasonably be expected to identify such transactions with particularity. The warrant was therefore not overbroad.

*SUPPRESSION OF EVIDENCE.*

Applying the "fruit of the poisonous tree" doctrine, the trial court ruled that all evidence obtained after

execution of the first search warrant on August 6, 1976, was tainted and accordingly suppressed all such evidence.

Although the "fruit of the poisonous tree" doctrine requires exclusion of any evidence obtained by exploitation of an illegal search, it does not prevent the use of evidence obtained by means sufficiently distinguishable to remove the primary taint of illegality. *Muetze v. State*, 73 Wis.2d 117, 130, 243 N.W.2d 393 (1976). Here there was no determination whether additional evidence in the hands of the state had been obtained through independent and untainted channels. The defendant argues that a subsequent audit of the police records and other independent investigations can "be presumed to be an outgrowth" of the search of Starke's desk. This presumption has no support in the record.

The defendant further contends that all the further investigations undertaken by the state can be traced to the search of the desk, which, the defendant says, raised certain questions as to the handling of finances. The defendant specifically argues that the August 13, 1976, bank search was an outgrowth of the items observed in or seized from the desk. The state does not contest the suppression of any of the thirty-six items seized other than the Edwards and Hanson arrest warrants. We conclude that the remaining thirty-four items were properly suppressed.

From the present record and because of the all-encompassing suppression order of the trial judge, it is not possible to determine the nature or the significance of the items seized, or their relation to the subsequent investigation. Nor does the record indicate what items may have been observed but not seized.

However, since we have held that probable cause was shown for a search of the desk of the defendant for the two arrest warrants (Edwards and Hanson), and for the bank search, it becomes necessary to remand the

case for consideration of the extent, if any, to which the state's other evidence is tainted. Therefore, on remand, a determination will be made of the extent, if any, to which the improper continuation of the desk search and the seizure of the thirty-four items, after seizure of the two arrest warrants, contaminated the subsequent investigations, including the August 13, 1976, bank search.

We have determined that the search warrants were supported by probable cause and that the suppression order should be modified and the cause remanded. It follows that the issue directed to the order of the trial court denying the motion of the state for a continuance becomes moot.

Finally, the state argues that the trial court erred in granting the defendant's motion to dismiss the prosecution after the evidence had been suppressed and the continuance denied. The trial court's ruling followed the special prosecutor's statement that the suppression order had stripped the state of its ability to present a prima facie case. The trial court recognized that the state was not in a position to proceed because of its suppression ruling when it entered its order of dismissal.

The result of our holding that the trial court erred in entering its all inclusive suppression order is that it was error to order a dismissal of the prosecution. The order of dismissal is therefore reversed.

Our conclusion is that the suppression order entered May 6, 1977, be modified insofar as it suppressed the two arrest warrants seized from the desk of the defendant and the evidence seized in the bank search. The order dismissing the action is reversed. The cause is remanded for a determination of the extent to which the state's evidence acquired after August 6, 1976, was tainted by the improper search of defendant's desk after the Edwards and Hanson warrants were seized and by the seizure of various items in that search. This inquiry should also determine whether the bank search was improper as a tainted outgrowth of this improper search.

*By the Court.*—Order of April 22, 1977, reversed. Suppression order of May 6, 1977, modified in part and remanded for further proceedings consistent with this opinion.

ABRAHAMSON, J. *(concurring).* The majority opinion concludes that the search of the bank records was conducted pursuant to a valid warrant and therefore it need not reach the constitutional question of whether art. I, sec. 11 of the Wisconsin Constitution prohibits the inspection of a bank depositor's records without a valid search warrant.

I think the majority goes at this issue backwards. The first issue to decide is whether bank depositors have a constitutionally protected interest in these bank records. If depositors have a constitutionally protected interest, they can object to the validity of a warrant; if they have no constitutionally protected interest, the bank must challenge the warrant, and the bank did not do so in the instant case.

The United States Supreme Court in *United States v. Miller,* 425 U.S. 435, 439, 440, 446 (1976), analyzed the issue in this way and concluded that depositors do not have a protected fourth amendment interest in their bank records:

"The Government contends that the Court of Appeals erred in three respects: (i) in finding that respondent had the Fourth Amendment interest necessary to entitle him to challenge the validity of the subpoenas *duces tecum* through his motion to suppress; (ii) in holding that the subpoenas were defective; and (iii) in determining that suppression of the evidence obtained was the appropriate remedy if a constitutional violation did take place.

"We find that there was no intrusion into any area in which respondent had a protected Fourth Amendment interest and that the District Court therefore correctly denied respondent's motion to suppress. Because we reverse the decision of the Court of Appeals on that

ground alone, we do not reach the Government's latter two contentions.

"...

"In any event, for the reasons stated above, we hold that respondent lacks the requisite Fourth Amendment interest to challenge the validity of the subpoenas.[9] [[9] There is no occasion for us to address whether the subpoenas complied with the requirements outlined in *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186 (1946). The banks upon which they were served did not contest their validity.]"

I believe the state constitutional issue is properly before us; it has been briefed. We should decide the question now and settle the issue promptly for the proper administration of justice in this state.

Art. I, sec. 11, Wis. Const. provides:

"The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

Although the wording of section 11 of article I is precisely that of the fourth amendment to the United States Constitution, our court has not construed the two provisions as congruent. The court has said only that art. I, sec. 11 is "substantially like" the fourth amendment and that the fourth amendment standards and principles are "generally applicable to the construction of art. I, sec. 11." *State v. Paszek,* 50 Wis.2d 619, 624, 184 N.W.2d 836 (1971); *State v. Beal,* 40 Wis.2d 607, 612, 162 N.W.2d 640 (1968). Indeed in *State v. Doe,* 78 Wis.2d 161, 171, 172, 254 N.W.2d 210 (1977), we clearly stated that the rights of persons within Wisconsin may exceed the minimum safeguards secured to persons by the United States Constitution:

"Certainly, it is the prerogative of the State of Wisconsin to afford greater protection to the liberties of

persons within its boundaries under the Wisconsin Constitution than is mandated by the United States Supreme Court under the Fourteenth Amendment. See William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights*, 90 Harv. L. Rev. 489 (January 1977). This court has never hesitated to do so. . . .

". . .

"This court has demonstrated that it will not be bound by the minimums which are imposed by the Supreme Court of the United States if it is the judgment of this court that the Constitution of Wisconsin and the laws of this state require that greater protection of citizens' liberties ought to be afforded."

I would hold that each person has a reasonable expectation of privacy in his or her bank statement and records which is protected under art. I, sec. 11 of the Wisconsin Constitution. I would adopt the reasoning and language of Mr. Justice Mosk, who, writing for a unanimous California Supreme Court, stated:

"It cannot be gainsaid that the customer of a bank expects that the documents, such as checks, which he transmits to the bank in the course of his business operations, will remain private, and that such an expectation is reasonable. The prosecution concedes as much, although it asserts that this expectation is not constitutionally cognizable. Representatives of several banks testified at the suppression hearing that information in their possession regarding a customer's account is deemed by them to be confidential.

". . . That the bank alters the form in which it records the information transmitted to it by the depositor to show the receipt and disbursement of money on a bank statement does not diminish the depositor's anticipation of privacy in the matters which he confides to the bank. A bank customer's reasonable expectation is that, absent compulsion by legal process, the matters he reveals to the bank will be utilized by the bank only for internal banking purposes. Thus, we hold petitioner had a reasonable expectation that the bank would maintain the confidentiality of those papers which originated with him in check form and of the bank statements into

which a record of those same checks had been transformed pursuant to internal bank practice.

"...

"... The mere fact that the bank purports to own the records which it provided to the detective is not, in our view, determinative of the issue at stake. The disclosure by the depositor to the bank is made for the limited purpose of facilitating the conduct of his financial affairs; it seems evident that his expectation of privacy is not diminished by the bank's retention of a record of such disclosures.

"... It is not the right of privacy of the bank but of the petitioner which is at issue, and thus it would be untenable to conclude that the bank, a neutral entity with no significant interest in the matter, may validly consent to an invasion of its depositors' rights. ...

"...

"... For all practical purposes, the disclosure by individuals or business firms of their financial affairs to a bank is not entirely volitional, since it is impossible to participate in the economic life of contemporary society without maintaining a bank account. In the course of such dealings, a depositor reveals many aspects of his personal affairs, opinions, habits and associations. Indeed, the totality of bank records provides a virtual current biography. While we are concerned in the present case only with bank statements, the logical extension of the contention that the bank's ownership of records permits free access to them by any police officer extends far beyond such statements to checks, savings, bonds, loan applications, loan guarantees, and all papers which the customer has supplied to the bank to facilitate the conduct of his financial affairs upon the reasonable assumption that the information would remain confidential. To permit a police officer access to these records merely upon his request, without any judicial control as to relevancy or other traditional requirements of legal process, and to allow the evidence to be used in any subsequent criminal prosecution against a defendant, opens the door to a vast and unlimited range of very real abuses of police power.

"Cases are legion that condemn violent searches and invasions of an individual's right to the privacy of his dwelling. The imposition upon privacy, although perhaps

not so dramatic, may be equally devastating when other methods are employed. Development of photocopying machines, electronic computers and other sophisticated instruments have accelerated the ability of government to intrude into areas which a person normally chooses to exclude from prying eyes and inquisitive minds. Consequently judicial interpretations of the reach of the constitutional protection of individual privacy must keep pace with the perils created by these new devices." *Burrows v. Superior Court*, 13 Cal.3d 238, 243–245, 247, 248, 118 Cal. Rptr. 166, 529 P.2d 590 (1974); quoted by Justice Brennan in his dissent in *United States v. Miller*, 245 U.S. 435, 447 (1976).

I would thus conclude that the bank depositor's records are protected by the Wisconsin Constitution from unlawful search and seizure.

I am authorized to state that Mr. Justice HEFFERNAN joins in this concurring opinion.