SHIRLEY S. ABRAHAMSON, C.J.
| 82. These cases raise the broader question of the capacity of the defendant, as a matter of due process law, to gain access to evidence the defendant may use at trial.
¶ 83. The court takes two approaches in deciding that the defendants lose:
¶ 84. The first approach is to deny that the Wisconsin constitution offers greater protection than the United States Constitution. Rather, the court holds that the United States Supreme Court decision in Arizona v. Youngblood, 488 U.S. 51 (1988), interpreting the federal constitutional due process guaranty, applies to the Wisconsin constitutional guaranty of due process.
¶ 85. The second approach is to assert that the court is bound, under the doctrine of stare decisis, by its prior decisions adopting Youngblood.
¶ 86. I take a third approach to the present cases. I do not rely on the due process clause of the Wisconsin Constitution. I would require that hereafter *48 a circuit court is to instruct the fact finder in cases like the instant cases that the fact finder may, but need not, infer that the destroyed evidence would have been favorable to the defense. If hereafter such a jury instruction is not given, the cause should be remanded for a new trial.
I
¶ 87. First, I disagree with the court's persistent antipathy to construing the Wisconsin Constitution's Declaration of Rights differently from the way the United States Supreme Court construes an analogous provision in the federal constitution. Federal jurisprudence is persuasive and helpful, but this court must make an independent judgment considering competing principles and policies under the Wisconsin Constitution.
¶ 88. We should follow our earlier precedent regarding interpretation of the Wisconsin Constitution. Ten years ago, the court emphasized that the similarity between the language in the Wisconsin Constitution and the language in the United States Constitution is not conclusive.
• In State v. Knapp, 2005 WI 127, ¶ 60, 285 Wis. 2d 86, 700 N.W.2d 899, the court stated: "While textual similarity or identity is important when determining when to depart from federal constitutional jurisprudence, it cannot be conclusive, lest this court forfeit its power to interpret its own constitution to the federal judiciary. The people of this state shaped our constitution, and it is our solemn responsibility to interpret it. Federal jurisprudence is persuasive and helpful, but we must save indepen *49 dent judgment for considering competing principles and policies under the Wisconsin Constitution."[1] (Citation omitted.)
• In State v. Dubose, 2005 WI 126, ¶ 41, 285 Wis. 2d 143, 699 N.W.2d 582, the court stated: "[Wjhile this results in a divergence of meaning between words which are the same in both federal and state constitutions, the system of federalism envisaged by the United States Constitution tolerates such divergence where the result is greater protection of individual rights under state law than under federal law...." (Quoted source omitted.)
¶ 89. In keeping with my oath of office to support the Wisconsin Constitution and the Constitution of the United States, I adhere to Knapp and Dubose and to State v. Doe, 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977), decided more than 35 years ago: The court "will not be bound by the mínimums which are imposed by the Supreme Court of the United States if it is the judgment of this court that the Constitution of Wisconsin and the laws of this state require that greater protection of citizen's liberties ought to be afforded."
¶ 90. The court must make this judgment in each case.
¶ 91. The majority opinion applies Arizona v. Youngblood to interpret the Wisconsin constitution. Youngblood is a troublesome case.
*50 II
¶ 92. Second, the majority opinion relies on Wisconsin precedent. See State v. Greenwold (Greenwold II), 189 Wis. 2d 59, 68-69, 525 N.W.2d 294 (Ct. App. 1994).
¶ 93. Stare decisis, "let the decision stand," is an essential bedrock principle in our system of justice. To overrule precedent requires special justification. "A court must keep in mind that it does 'more damage to the rule of law by obstinately refusing to admit errors, thereby perpetuating injustice, than by overturning an erroneous decision.[1] "[2]
¶ 94. The court has set forth the following factors that typically contribute to a decision to overturn prior case law:
• Changes or developments have undermined the rationale behind a decision;
• There is a need to make a decision correspond to newly ascertained facts;
• There is a showing that the precedent has become detrimental to coherence and consistency in the law;
• The prior decision is "unsound in principle;"
• The prior decision is "unworkable" in practice;
• The prior decision was not correctly decided; and
• The prior decision has not produced a settled body of law.[3]
¶ 95. These factors are sufficiently implicated in the present case to justify overturning Greenwold, as *51 demonstrated by Judge Brown's concurrence and Judge Reilly's dissent in the Weissinger decision in the court of appeals.
¶ 96. Judge Brown wrote in concurrence: Youngblood "sets up an illusion. . . . The bad faith component devised by the Supreme Court sets such a high bar, it is virtually impossible to overcome."[4] Judge Brown compiled a comprehensive review of criticism levied against the Youngblood bad faith requirement by state courts and commentators alike.[5] The fact that only 7 out of 1,500 published cases citing Youngblood found bad faith illustrates the inherent unfairness in the Youngblood test.
¶ 97. Judge Reilly wrote in dissent: "A criminal justice system that allows the government to destroy the sole evidence of a person's guilt prior to notice, charging, or a meaningful opportunity for the accused to inspect the State's evidence is fundamentally unfair."[6]
¶ 98. I share these judges' unease with the federal standard set forth in Youngblood (and adopted by Wisconsin case law).[7]
¶ 99. The Youngblood and Greenwold II decisions do not give meaningful protection to a defendant. "Ironically, the rule of law established by [Youngblood] was founded upon the conviction of an innocent man."[8]
*52 ¶ 100. There is an emerging consensus among courts that have considered the issue that the bad faith standard does not go far enough to protect adequately the rights of a person charged with a crime. I agree with those courts that viewed the bad faith requirement as a "potentially bottomless pit for a defendant's interest in a fair trial, and stepped back from the brink."[9] I take a third approach to the instant cases.
Ill
¶ 101. I conclude that under the circumstances of these cases the court should moderate Youngblood and Greenwold. One way of helping to alleviate the concern about destroyed evidence and ease the fundamental unfairness of the Youngblood bad-faith requirement is to require an instruction that states that the fact finder may, but need not, infer that evidence destroyed would have been favorable to the defense.[10]
¶ 102. This court often governs evidence in the circuit courts and requiring a curative instruction is not unusual in Wisconsin law.[11] Indeed, this court *53 relies on curative instructions with frequency. A curative instruction has been adopted by courts in other states in cases like the present cases.[12]
¶ 103. If hereafter such a jury instruction is not given in cases such as the instant cases, the cause should be remanded for a new trial.
¶ 104. I favor this approach because there should be consequences for even innocent or negligent loss or destruction of evidence to deter the State from losing or destroying evidence and to ensure that defendants do not bear the total burden of the State's conduct.[13] The inference instruction takes into account the State's explanation of the destruction of the evidence by permitting the fact finder to draw an adverse inference from the destruction when the fact finder determines that the State's explanation of the loss or destruction is inadequate.
¶ 105. Finally, I note that the invocation of a curative instruction is especially important in light of recent cases developing the law of evidence in this state. It is arguable that defendants are being given fewer and fewer opportunities to assess evidence against them.
*54 ¶ 106. For example, in State v. O'Brien, 2014 WI 54, ¶ 49, 354 Wis. 2d 753, 850 N.W.2d 8, the court upheld the use of hearsay evidence at preliminary hearings, thus reducing a defendant's right of cross-examination. In State v. Griep, 2015 WI 40, 361 Wis. 2d 657, 863 N.W.2d 567, the court concludes that the State does not violate the federal and state constitutional confrontation clauses by not calling as a witness the person who tested the defendant's blood at the laboratory and filed the report.
¶ 107. If the defendant's ability to cross-examine witnesses is being reduced, there is all the more reason to be sure that a defendant has the opportunity to independently test blood and challenge the State's evidence of the blood sample.
¶ 108. I concur (rather than dissent) because this instruction was not required at the time these cases were tried. Argument was made by counsel about missing evidence, but an instruction has more force and effect because it carries the imprimatur of a judge.[14]
¶ 109. For the reasons set forth, I write separately.

 See State v. Knapp, 2005 WI 127, ¶¶ 55-81, 285 Wis. 2d 86, 700 N.W.2d 899; id., ¶¶ 84-94 (Crooks, J., concurring, joined by Abrahamson, C.J., Bradley, J., & Butler, J.). Justice Crooks relied on Davenport v. Garcia, 834 S.W. 2d 4, 12 (Tex. 1992), declaring: "When a state court interprets the constitution of its state merely as a restatement of the Federal Constitution, it both insults the dignity of the state charter and denies citizens the fullest protection of their rights."

 Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, ¶ 34, 293 Wis. 2d 38, 717 N.W.2d 216.

 Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶¶ 94, 99, 100, 264 Wis. 2d 60, 665 N.W.2d 257.

 State v. Weissinger, 2014 WI App 73, ¶ 29, 355 Wis. 2d 546, 851 N.W.2d 780 (Brown, C.J., concurring).

 See id., ¶ 30, n.l (Brown, C.J., concurring).

 Weissinger, 355 Wis. 2d 546, ¶ 31 (Reilly, J., dissenting).

 State v. Greenwold, 189 Wis. 2d 59, 67, 525 N.W.2d 294 (Ct. App. 1994) (Greenwold ID; see majority op., ¶ 53.

 Norman C. Bay, Old Blood, Bad Blood, and Youngblood: Due Process, Lost Evidence, and the Limits of Bad Faith, 86 Wash. U. L. Rev. 241, 243 (2008). See also 6 Wayne R. *52 LaFave, Criminal Procedure § 24.3(e) at 388-89 (3d ed. 2007).

 Cost v. State, 10 A.3d 184, 195 (Md. 2010).
Numerous states have rejected Arizona v. Youngblood on state constitutional grounds. Cynthia E. Jones, The Right Remedy for the Wrongly Convicted: Judicial Sanctions for Destruction of DNA Evidence, 77 Fordham L. Rev. 2893 (2009); Norman C. Bay, Old Blood, Bad Blood, and Youngblood: Due Process, Lost Evidence, and the Limits of Bad Faith, 86 Wash. U. L. Rev. 279 (2008); Illinois v. Fisher, 540 U.S. 544, 549 n.* (2004) (Stevens, J., concurring).

 The instruction I propose would not be given when it is necessary for the sample to be destroyed to perform the test. See State v. Ehlen, 119 Wis. 2d 451, 351 N.W.2d 503 (1984).

 This court has superintending authority over all courts. Wis. Const, art. VII, § 3(1). See In re Jerrell C.J., 2005 WI 105, ¶ 3, 48, 283 Wis. 2d 145, 699 N.W.2d 110; see also id., *53 ¶¶ 71-94, (Abrahamson, C.J., concurring); Arneson v. Jezwinski, 206 Wis. 2d 217, 226, 556 N.W.2d 721 (1996) ('"The superintending power is as broad and as flexible as necessary to insure the due administration of justice in the courts of this state.'" (citation omitted)).

 See, e.g., People v. Handy, 988 N.E. 2d 879, 882 (N.Y. 2013) ("An adverse inference charge mitigates the harm done to defendant by the loss of evidence without terminating the prosecution."); State v. Glissendorf, 329 P.3d 1049 (Ariz. 2014) (instruction regarding inference is required under state law).

 For a discussion of mistakes made in crime laboratories, a failing score of the Wisconsin State Laboratory of Hygiene, and the limitations on the defendant in cross-examination, see Judge Reilly's dissent in Weissinger, 355 Wis. 2d 546, ¶¶ 44-45.

 Cost v. State, 10 A.3d 184, 196-97 (Md. 2010).