[988 NE2d 879, 966 NYS2d 351]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAY-SHAWN P. HANDY, Appellant.

Argued February 6, 2013; decided March 28, 2013

## POINTS OF COUNSEL

*Timothy P. Donaher, Public Defender*, Rochester (*Janet C. Somes* of counsel), for appellant. I. The People failed to present legally sufficient evidence of intent to cause physical injury. (*People v Danielson*, 9 NY3d 342; *People v Contes*, 60 NY2d 620; *Jackson v Virginia*, 443 US 307; *People v Hines*, 97 NY2d 56; *People v Gallagher*, 69 NY2d 525; *People v Steinberg*, 79 NY2d 673; *People v Fero*, 156 AD2d 582; *People v Bueno*, 18 NY3d 160; *People v Getch*, 50 NY2d 456; *People v Mahoney*, 6 AD3d 1104.) II. The trial court's failure to impose any sanction for the prosecution's failure to preserve material and critical evidence requires reversal. (*People v Steinberg*, 79 NY2d 673; *People v Smith*, 79 NY2d 309; *People v Rosario*, 9 NY2d 286; *People v Jackson*, 78 NY2d 638; *Brady v Maryland*, 373 US 83; *People v*

*Martinez*, 71 NY2d 937; *People v Gee*, 99 NY2d 158; *People v Walsh*, 262 NY 140; *Jencks v United States*, 353 US 657.)

*Sandra Doorley, District Attorney*, Rochester (*Geoffrey Kaeuper* of counsel), for respondent. I. The evidence was legally sufficient to prove defendant guilty of an intentional assault. (*People v Bleakley*, 69 NY2d 490; *Matter of Kadeem W.*, 5 NY3d 864; *People v Steinberg*, 79 NY2d 673; *People v Bueno*, 18 NY3d 160; *People v Barnes*, 50 NY2d 375; *People v Contes*, 60 NY2d 620.) II. The trial court did not abuse its discretion in denying defendant's request for a mandatory adverse inference instruction as to count 2. (*People v Gibbs*, 85 NY2d 899; *People v Bryant*, 31 NY2d 744; *People v Jordan*, 62 NY2d 825; *People v Martinez*, 71 NY2d 937; *People v Iannelli*, 69 NY2d 684; *People v Liccione*, 50 NY2d 850; *People v Kelly*, 62 NY2d 516; *People v Banch*, 80 NY2d 610; *People v Joseph*, 86 NY2d 565; *People v Wallace*, 76 NY2d 953.)

## OPINION OF THE COURT

SMITH, J.

We hold that when a defendant in a criminal case, acting with due diligence, demands evidence that is reasonably likely to be of material importance, and that evidence has been destroyed by the State, the defendant is entitled to an adverse inference charge.

I

Defendant was charged with three assaults on three different deputy sheriffs, based on events that occurred while defendant was an inmate at the Monroe County Jail. Counts one and two referred to alleged assaults on November 8, 2006, and count three to an event on January 8, 2007. Defendant was acquitted on the first and third counts, but was convicted on the second. Though only the second count is before us, we will describe the evidence relating to counts one and two, because they arose out of a single sequence of events.

According to the testimony of Deputy Brandon Saeva, he approached defendant in his cell just after defendant had returned from a shower. Saeva noticed that defendant had sandals and boxer shorts that were not "jail issue," and asked defendant to give them to him. After some discussion, defendant refused to give Saeva the sandals and took a swing at him, leading to a fistfight in which Saeva's hand was injured. Another deputy helped Saeva get defendant under control, and defendant was then handed off to other staff who came to help.

Deputy Timothy Schliff testified that he was among those who took charge of defendant after his altercation with Saeva. When Schliff arrived on the scene, defendant was struggling with the men who were escorting him, and Schliff reached for defendant's right leg to help control him. Defendant kicked back, injuring Schliff's thumb.

Defendant testified, giving a different version of events. He said that, after a verbal argument, Saeva started the physical fight by swinging at defendant, and that Saeva then tackled him. Defendant did not remember seeing Schliff among the deputies who escorted him away afterwards, but he denied kicking at or trying to hurt any deputies. The jury acquitted him of assaulting Saeva, but convicted him of assaulting Schliff.

The main issue before us concerns a video camera located in the cell block where defendant and Saeva had their altercation.* Saeva testified that the camera faced toward defendant's cell, but not "directly" toward it; it showed "only part of his doorway, but not much." He testified that he had himself looked at the images recorded by that camera, and had been able to see a "very small part" of the November 8 incident. He testified that others were present when he looked at the images, but he could not remember who they were; nor could he remember whether he had looked at the images only once, or several times.

It is undisputed that these video images were destroyed before trial. According to a statement the prosecutor made on the first day of trial, it was jail policy to record over such images after 30 days. That time elapsed while defendant was being held on a felony complaint relating to the two November 8 incidents, but before he was indicted.

In an omnibus motion made before trial, defendant asked among other things to be told "[w]hether any electronic surveillance in any form was utilized in this case" and "the location of any such tapes." The People responded in general terms that they "have provided all discoverable material in their possession" and that "[t]o the extent that there may be" any videotapes defendant would be permitted to view or inspect them. There was more specific pretrial discussion of video relating to the January 2007 incident—discussion that is now irrelevant, because the jury acquitted defendant of the charge

---

* Another camera might also have recorded images of the interaction between defendant and Schliff, but the record on this is not clear. Our decision does not turn on whether any video of the Schliff incident ever existed.

relating to January—but the parties do not appear to have focused specifically on video of the November incidents until the time of trial.

At trial, the court agreed to give an adverse inference charge with respect to any video of the January incident, because defendant had asked for the preservation of that video before it was destroyed. Defendant, arguing that "[w]e made our request for preservation of the [November] video as soon as we could," asked that the same charge be given as to counts one and two, but the court refused. The language of the charge given as to count three, but rejected as to counts one and two, was:

> "You may consider the failure of the People to preserve that material in determining the weight to be given to the testimony of the People's witnesses regarding this specific incident. The law permits, but does not require you to infer, if you believe it proper to do so, that had the material been preserved its contents would not support or be inconsistent with the witnesses['] testimony as to this incident."

The Appellate Division affirmed defendant's conviction on count two, rejecting his argument that an adverse inference charge should have been given (*People v Handy*, 83 AD3d 1454 [4th Dept 2011]). The Appellate Division said that "[t]here is no support in the record for defendant's assertion that the alleged videotape was exculpatory and thus his contention that the alleged videotape was *Brady* material is merely speculative" (*id.* at 1455). A Judge of this Court granted leave to appeal (18 NY3d 924 [2012]), and we now reverse.

## II

The questions that arise when a criminal defendant claims that evidence favorable to him has become unavailable through the fault of the prosecution take many forms, and have been answered in a number of ways.

Under the familiar *Brady* rule, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material . . . irrespective of the good faith or bad faith of the prosecution" (*Brady v Maryland*, 373 US 83, 87 [1963]). Even without a request, disclosure of such evidence is required "if the omitted evidence creates a reasonable doubt that did not otherwise exist" of the defendant's guilt (*United States v Agurs*, 427 US 97, 112 [1976]). The

application of these rules to cases where evidence has been lost or destroyed, so that it is impossible to know for sure whether it would have helped the defendant or not, has caused much debate. The United States Supreme Court has held that any duty of a state to preserve evidence "must be limited to evidence that might be expected to play a significant role in the suspect's defense" (*California v Trombetta*, 467 US 479, 488 [1984]). And in *Arizona v Youngblood* (488 US 51, 58 [1988]), the Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."

A number of state courts have rejected the *Youngblood* holding in interpreting their state constitutions, while others have followed it (*see generally State v Tiedemann*, 2007 UT 49, ¶ 42, 162 P3d 1106, 1116 [Utah 2007] [collecting cases]; Daniel R. Dinger, Note, *Should Lost Evidence Mean a Lost Chance to Prosecute?: State Rejections of the United States Supreme Court Decision in Arizona v Youngblood*, 27 Am J Crim L 329 [2000]). Our Court has not addressed the *Youngblood* issue directly, though we have considered related issues (*see People v Hayes*, 17 NY3d 46, 50-52 [2011] [rejecting a rule that would require the prosecution affirmatively to obtain evidence for the benefit of a criminal defendant]; *People v Jardin*, 88 NY2d 956, 958 [1996] [rejecting claim that due process required the prosecution "to gather and adequately preserve a sample of semen sufficient for DNA testing"]; *People v Haupt*, 71 NY2d 929, 930-931 [1988] [rejecting dismissal where inadvertently destroyed evidence "had little or no relevance" to the main issue at trial]; *People v Kelly*, 62 NY2d 516, 518-522 [1984] [rejecting dismissal for failure to preserve evidence because "less drastic sanctions would have cured any prejudice"]). Several Appellate Division decisions follow *Youngblood* (*e.g. People v Feliciano*, 301 AD2d 480 [1st Dept 2003]; *People v Callendar*, 207 AD2d 900 [2d Dept 1994]; *People v Bridges*, 184 AD2d 1042 [4th Dept 1992]).

Here, defendant asks us to depart from *Youngblood* and adopt an interpretation of the New York Constitution that is more favorable to defendants. We see no need, however, either to agree or disagree with *Youngblood*, or indeed to address any constitutional issue. *Youngblood* held only that dismissal of an indictment was not required by the Due Process Clause; defendant here did not seek dismissal of the indictment based on the People's failure to preserve the video images. The only question

before us is whether an adverse inference charge should have been given.

We resolve this case, following the approach taken by the Maryland Court of Appeals in *Cost v State* (417 Md 360, 10 A3d 184 [2010]), by holding that, under the New York law of evidence, a permissive adverse inference charge should be given where a defendant, using reasonable diligence, has requested evidence reasonably likely to be material, and where that evidence has been destroyed by agents of the State. This rule is not in tension with the holding of *Youngblood*: an adverse inference charge was given in that case, as Justice Stevens emphasized in his concurring opinion (488 US at 59-60).

A principal advantage of the *Youngblood* rule is that it avoids the drastic sanction of dismissal, except in cases where the bad faith of the police shows their own belief "that the evidence could form a basis for exonerating the defendant" (*Youngblood*, 488 US at 58). A disadvantage is that it subjects defendants to the risk that exculpatory evidence has been lost, even where the loss is the State's fault. Thus, the Appellate Division here characterized "defendant's assertion that the alleged videotape was exculpatory" as "merely speculative" (*People v Handy*, 83 AD3d at 1455). But it was State agents who, by destroying the video, created the need to speculate about its contents. An adverse inference charge mitigates the harm done to defendant by the loss of the evidence, without terminating the prosecution.

At least as important, the rule gives the State an incentive to avoid the destruction of evidence. It is surely desirable to raise the consciousness of State employees on this subject. For example, in cases, like the one before us, that arise out of events in jails or prisons, the authorities in charge should, when something that will foreseeably lead to criminal prosecution occurs, take whatever steps are necessary to insure that the video will not be erased—whether by simply taking a tape or disc out of a machine, or by instructing a computer not to delete the material. The rule we adopt today increases the chance that the staffs of these institutions will act accordingly.

Our rule is unlikely, we think, to increase greatly the risk that a good faith error by the State will lead to a guilty defendant's acquittal. We hold only that the jury should be told it *may* draw an inference in defendant's favor. This instruction, as the Maryland court suggested in *Cost*, could be labeled a "missing

evidence" instruction (417 Md at 369, 10 A3d at 190)—not unlike the "missing witness" instruction given when a party fails to call a witness who is under that party's control and might be expected to give favorable testimony (*see People v Savinon*, 100 NY2d 192 [2003]). The instruction "neither establishes a legal presumption nor furnishes substantive proof" (*Cost*, 417 Md at 382, 10 A3d at 197).

## III

The application of the rule to this case is clear: defendant was entitled, as he requested, to have the adverse inference charge the court gave made applicable to all counts. The evidence in question—the destroyed video images—admittedly captured part of the encounter between Saeva and defendant. We cannot unquestioningly accept Saeva's assertion that it was a "very small part." Saeva recognized the potential importance of the video by choosing to look at it himself. Defendant should have had the same opportunity. And while the video was most directly relevant to count one—the alleged assault on Saeva, of which defendant was acquitted—the alleged assault on Schliff, of which he was convicted, followed immediately afterwards and was part of the same chain of events. A video showing that defendant either was or was not a violent aggressor in the Saeva incident would be helpful to a jury trying to decide whether Schliff's or defendant's account of the later incident was true.

Defendant's argument that the evidence was insufficient to support the jury's guilty verdict is without merit.

Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.

Chief Judge LIPPMAN and Judges GRAFFEO, READ and PIGOTT concur; Judge RIVERA taking no part.

Order reversed and a new trial ordered.