==================================================================
This opinion is uncorrected and subject to revision before
publication in the New York Reports.
------------------------------------------------------------------
No. 158
The People &c.,
          Respondent,
        v.
Andrew Blake,
          Appellant.

Alexandra Keeling, for appellant.
Vincent Rivellese, for respondent.

LIPPMAN, Chief Judge:

After a jury trial, defendant was convicted of three counts of attempted second degree murder, two counts of first degree assault, assault in the second degree, two counts of criminal possession of a weapon in the second degree, reckless endangerment in the first degree and bribery in the second

- 1 -

degree.  The trial evidence established that, during an altercation in a New York City housing project, defendant shot three men with a handgun recovered several days later from the water tank of a toilet in the Wilmington, Delaware apartment to which defendant fled in the shooting's aftermath.  Defendant raises no challenge to his weapon possession convictions.  Nor does he now challenge his conviction for bribery, premised on proof that, following his arrest, he offered police detectives substantial sums to destroy video tapes purportedly implicating him in the New York shootings.  Defendant seeks relief only from those portions of the underlying judgment convicting him of attempted murder, assault and reckless endangerment.

At trial, defendant sought to portray his resort to deadly force as justified; he maintained that he fired at his four adversaries because they had surrounded him and were about to set upon him with razors.[1]  This claim, his attorney argued, would have been objectively verified had the tape from a video surveillance camera periodically trained upon the location of the altercation been timely retrieved instead of having been left in the recording device and recorded over due to an unexplained oversight.  Indeed, defendant's attorney was permitted to urge over the prosecutor's objection that the missing tape would have

_____

[1]Defendant did not testify.  He raised the claim that he had acted in self-defense during a video-recorded portion of his post-arrest interview entered in evidence by the prosecution.

shown "a terrified [defendant]" attempting to escape his aggressors, and to express astonishment that "the one video that would show what happened"[2] had been lost by "the most powerful law enforcement agency in this country."  Counsel, however, did not request, as she could have, a charge permitting, but not requiring, the jury to infer that the content of the missing tape would not have been favorable to the prosecution. Defendant's sole appellate contention is that the failure to ask for the charge rendered counsel's representation constitutionally ineffective.

In the decision and order we now review pursuant to leave granted by a Judge of this Court (21 NY3d 1013 [2013]), the Appellate Division declined to afford defendant relief, both because the appellate record was, in its view, insufficient to exclude a strategic justification for a decision by counsel not to request a charge merely permitting an adverse inference, and in light of what the court understood to be the overwhelming evidence refuting defendant's claim that his conduct had been justified (105 AD3d 431, 431-432 [2013]).  We now affirm.

While it is not utterly implausible that defense counsel reasonably elected not to seek a permissive adverse inference charge after having been permitted, over the People's

_____

[2]Tapes were recovered from other surveillance cameras, but although they captured surrounding events they did not capture what transpired at the moment of the shootings.

objection, forcefully to argue that the missing evidence would certainly have substantiated her client's contention that his conduct had been justified, defendant's contention that he was ineffectively represented may for other reasons be more conclusively laid to rest.

It is well-established that the effectiveness of a representational effort is ordinarily assessed on the basis of the representation as a whole (see Strickland v Washington, 466 US 668, 687-688 [1984]; People v Turner, 5 NY3d 476, 480 [2005]; People v Baldi, 54 NY2d 137, 146-147 [1981]).  One error -- and only one is identified here -- in the context of an otherwise creditable performance by counsel generally will not suffice in support of the conclusion that the representation was not "meaningful" (see Baldi, 54 NY2d at 147) or fell below the objective standard of reasonableness required by the Federal Constitution (Strickland, 466 US at 688).  There are, of course, exceptional cases in which an error is so clear-cut, egregious and decisive that it will overshadow and taint the whole of the representation (see People v Turner, 5 NY3d at 480-481; and see People v Caban, 5 NY3d 143, 152 [2005]), but this is not that rare sort of case.  Allowing for argument's sake that counsel erred in omitting to request the charge, that lone error was not in the context of this prosecution sufficiently egregious and prejudicial to constitute a predicate for the relief now sought.

The entitlement to an adverse inference charge, such as

the one defendant's attorney allegedly neglected to seek, was not conclusively established until 2013 when we decided People v Handy (20 NY3d 663 [2013]). It was in Handy that we first held such a charge to be mandatory upon request "when a defendant in a criminal case, acting with due diligence, demand[ed] evidence . . . reasonably likely to be of material importance, and that evidence ha[d] been destroyed by the State" (id. at 665).  Before Handy, the availability of the charge was discretionary.  At the time of defendant's trial, in 2009, competent counsel would naturally have seized upon the government's unexplained failure to preserve probably material evidence to encourage an inference adverse to the prosecution and favorable to her client, precisely as defendant's trial counsel did, but there was then no legal authority absolutely entitling her client to the judicial instruction she is now faulted for not having sought (see Handy, 20 NY3d at 669-670).  Perhaps it was a mistake not to seek the charge, which likely would have been given as a matter of discretion, but if it was a mistake, it was not one so obvious and unmitigated by the balance of the representational effort as singly to support a claim for ineffective assistance.

More importantly, there is no reason to suppose that a Handy-type charge would have availed defendant.  The jury was well aware that, as defense counsel had emphasized, the police had failed to preserve "the one video that would show what happened," but nonetheless rejected the argument specifically

allowed by the trial court over the People's protest, that the tape would have proved that defendant only fired his gun to avoid being shred by his assailants' razors.  The reasons for this rejection are clear and, contrary to defendant's argument, bear no discernible relation to the prosecutor's summation remarks briefly urging the jury not to speculate, as it would have if, in accordance with a Handy charge, it had elected to draw an inference adverse to the prosecution, not from evidence but from its absence (see Handy, 20 NY3d at 669).

Although defendant claimed that his antagonists were armed, the video evidence that was presented at trial depicted one of defendant's adversaries a moment before the shootings with his arms extended at his sides and his palms open, and there was no proof that razors or other weapons were found on or near the victims when they were attended soon after being shot.  There was, in addition, forensic evidence that one of defendant's victims had been shot in the back while fleeing, a circumstance dramatically at odds with defendant's contention that he fired in self-defense.  And, there was the evidence of defendant's conduct following the altercation -- fleeing the jurisdiction and attempting to secrete evidence linking him to the shootings -- which must have seriously undermined his claim of justification. Yet, perhaps most damaging to defendant's contention that the missing video would have borne out his assertion that he acted to defend himself, was the proof that he attempted to bribe the

arresting officers to destroy videotapes the officers said they had of the altercation.  Surely it was not lost upon the jury that defendant would not have sought the destruction of tapes of the incident -- the very evidence he later complained was missing -- if there had been reason to suppose that such evidence would substantiate his justification claim.

We do not exclude the possibility that, post-<u>Handy</u>, the failure to request a <u>Handy</u> charge could support an ineffective assistance claim.  But the viability of such a claim, conditioned upon a demonstration of prejudice attributable to counsel's inadequacy (<u>see</u> <u>Strickland</u>, 466 US at 694; <u>People v Caban</u>, 5 NY3d at 155-156), would depend, in crucial part, upon facts making the adverse inference <u>Handy</u> merely makes available at least reasonably plausible.  The present facts do not meet that condition. On this record, it cannot be said that there was even a reasonable possibility, much less a reasonable probability (<u>see</u> <u>Strickland</u>, 466 US at 694) that the jury, if offered the opportunity, would have elected to draw an inference adverse to the prosecution as to what the missing video would have shown.

Accordingly, the order of the Appellate Division should be affirmed.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed.  Opinion by Chief Judge Lippman.  Judges Graffeo, Read, Smith, Pigott, Rivera and Abdus-Salaam concur.

Decided October 21, 2014