# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

384
KA 13-01138
PRESENT: CENTRA, J.P., PERADOTTO, CARNI, CURRAN, AND TROUTMAN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

BERNARD J. BUTLER, ALSO KNOWN AS BERNARD FAULKS,
DEFENDANT-APPELLANT.

---

BRIDGET L. FIELD, ROCHESTER, FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (LEAH R. MERVINE OF
COUNSEL), FOR RESPONDENT.

---------------------------------------------------------------------------------------------------------

Appeal from a judgment of the Supreme Court, Monroe County (Alex R. Renzi, J.), rendered May 22, 2013. The judgment convicted defendant, upon a jury verdict, of criminal possession of a weapon in the second degree (two counts) and assault in the second degree.

It is hereby ORDERED that the judgment so appealed from is affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b]; [3]) and one count of assault in the second degree (§ 120.05 [2]). Defendant's conviction stems from his conduct in shooting the victim, striking him in the buttocks. Defendant contends that the evidence is legally insufficient to establish that he was the shooter, that the weapon was operable, and that the victim sustained a physical injury. We reject those contentions. Two eyewitnesses identified defendant as the shooter and described the gun. Two cartridge cases were found at the scene, and the People's expert testified that they came from one firearm. That evidence is sufficient to establish defendant's identity and the operability of the firearm (*see People v Ciola*, 136 AD2d 557, 557, *lv denied* 71 NY2d 893). Although there were minor inconsistencies in the testimony of the eyewitnesses, those inconsistencies do not render their testimony incredible as a matter of law (*see People v Harris*, 56 AD3d 1267, 1268, *lv denied* 11 NY3d 925). The People further established, through the testimony of the People's witnesses and the victim's medical records, that the victim sustained a physical injury inasmuch as he experienced "substantial pain" from the gunshot (*People v West*, 129 AD3d 1629, 1631, *lv denied* 26 NY3d 972; *see People v Chiddick*, 8 NY3d 445, 447). Viewing the evidence in light of the elements of the crimes as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we reject defendant's

further contention that the verdict is against the weight of the evidence (*see generally People v Bleakley*, 69 NY2d 490, 495).

We reject defendant's contention that the photo arrays were unduly suggestive and thus that Supreme Court erred in refusing to suppress the identification testimony (*see generally People v Chipp*, 75 NY2d 327, 335, *cert denied* 498 US 833). All of the men in the photo arrays were of similar complexion, had similar haircuts and facial hair, and had a teardrop tattoo underneath the left eye, which was either computer-generated or drawn in ink. The fact that defendant was the only one wearing a hooded sweatshirt is of no moment considering that each man was wearing unique clothing. While the background of defendant's photograph was darker than that of the other photographs, we conclude that "[t]he composition and presentation of the photo array[s] were such that there was no reasonable possibility that the attention of the witness[es] would be drawn to defendant as the suspect chosen by the police" (*People v Sylvester*, 32 AD3d 1226, 1227, *lv denied* 7 NY3d 929; *see People v Boria*, 279 AD2d 585, 586, *lv denied* 96 NY2d 781; *People v Floyd*, 173 AD2d 211, 212, *lv denied* 78 NY2d 966).

Contrary to defendant's contention, the court did not err in denying his request for a missing witness charge with respect to two witnesses. Defendant failed to meet his initial burden of establishing that one witness would provide testimony favorable to the prosecution (*see People v Simon*, 71 AD3d 1574, 1575, *lv denied* 15 NY3d 757, *reconsideration denied* 15 NY3d 856; *People v Karas*, 21 AD3d 1360, 1361, *lv denied* 5 NY3d 883, *reconsideration denied* 6 NY3d 814; *see generally People v Gonzalez*, 68 NY2d 424, 427), and the People established with respect to the other witness that his testimony would be cumulative to the testimony of the other witnesses (*see People v Carr*, 59 AD3d 945, 946, *affd* 14 NY3d 808; *People v Hawkins*, 84 AD3d 1736, 1737, *lv denied* 17 NY3d 806).

We agree with defendant that the court erred in refusing to give an adverse inference charge based on the People's failure to preserve surveillance tapes (*see People v Handy*, 20 NY3d 663, 669). Defendant used reasonable diligence in requesting those tapes, which captured "evidence that [was] reasonably likely to be of material importance" (*id.* at 665), i.e., a video in the area where the crime occurred, from cameras operated by the City of Rochester Police Department.

We respectfully disagree with our concurring colleague that the State's duty to preserve surveillance videos is not triggered until a request has been made by the defendant. The Court of Appeals in *Handy* did not make any such pronouncement, but rather held that "when a defendant in a criminal case, acting with due diligence, demands evidence that is reasonably likely to be of material importance, and that evidence has been destroyed by the State, the defendant is entitled to an adverse inference charge" (*id.*). By way of further guidance, and of particular relevance to this case, the Court stated that "the authorities in charge should, when something that will foreseeably lead to criminal prosecution occurs, take whatever steps are necessary to insure that the video will not be erased—whether by

simply taking a tape or disc out of a machine, or by instructing a computer not to delete the material" (*id.* at 669). To conclude that the duty to preserve is not triggered until a request is made by the defendant would only give an incentive to State agents to destroy the evidence before the defendant has a chance to request the tapes. Such a rule would also directly contravene the explicit policy underlying the Court's rationale in *Handy*, namely, to "give[] the State an incentive to avoid the destruction of evidence" and to "raise the consciousness of State employees on this subject" (*id.*).

Although we conclude that the court erred in failing to give the requested adverse inference charge, we further conclude that the error is harmless (*see People v Bradley*, 108 AD3d 1101, 1102, *lv denied* 22 NY3d 1039). The evidence of guilt is overwhelming, and there is no reasonable possibility that the absence of an adverse inference charge contributed to the conviction (*see People v Blake*, 105 AD3d 431, 431, *affd* 24 NY3d 78; *see generally People v Crimmins*, 36 NY2d 230, 237).

Defendant failed to preserve for our review his contention that the court's *Sandoval* ruling constitutes an abuse of discretion (*see People v Tolliver*, 93 AD3d 1150, 1151, *lv denied* 19 NY3d 968; *People v Jackson*, 46 AD3d 1408, 1409, *lv denied* 10 NY3d 841). In any event, we reject that contention. "[T]he court's *Sandoval* compromise, in which it limited questioning on defendant's prior convictions for [ ]related offenses to whether defendant had been convicted of a felony or misdemeanor on the appropriate date, 'reflects a proper exercise of the court's discretion' " (*People v Stevens*, 109 AD3d 1204, 1205, *lv denied* 23 NY3d 1043). Defendant also failed to preserve for our review his contention that the indictment was multiplicitous because it charged criminal possession of a weapon in the second degree in more than one count (*see People v Jefferson*, 125 AD3d 1463, 1464, *lv denied* 25 NY3d 990). In any event, that contention is without merit (*see People v Simmons*, 133 AD3d 1275, 1277). We reject defendant's further contention that we should reverse one of the two convictions of criminal possession of a weapon in the second degree in the interest of justice because the two counts were based upon his possession of the same weapon. We see no reason to do so inasmuch as the "two counts are separate crimes" (*People v Rice*, 5 AD3d 1074, 1074, *lv denied* 2 NY3d 805). Finally, the sentence is not unduly harsh or severe.

All concur except CURRAN, J., who concurs in the result in the following memorandum: I concur in the result reached by the majority, but I write separately because, in my view, an adverse inference charge based on the People's failure to preserve surveillance video(s) is not required by *People v Handy* (20 NY3d 663), as explained in *People v Durant* (26 NY3d 341). I agree with the majority that *People v Handy* (20 NY3d 663) stands for the very broad proposition that the People must preserve evidence as of the time "when something that will foreseeably lead to criminal prosecution occurs" (20 NY3d at 669). Moreover, inasmuch as the record before our Court in *Handy* showed that the subject video evidence pertaining to the first jailhouse arrest was recorded over before a criminal proceeding was commenced, it is

clear that the duty to preserve evidence established in *Handy* arose before the defendant was even charged with a crime for the subject incident.  While I fear that such a broad duty to preserve evidence places a huge burden on the People, especially in light of the enormous amount of electronic and digital information that is collected these days, I concur with the majority that *Handy* has such a wide scope.

This case provides a glimpse of the burden created by *Handy*. There are approximately 50 so-called "blue light" cameras strategically placed throughout the City of Rochester (http://www.cityofrochester.gov/article.aspx?id=8589936528).  The surveillance video here is from one such camera and involved one brief incident that may or may not have been captured by the camera.  In this case, the police thought to look at the video and determined that the assault was not captured on it and therefore did not suspend the video's automatic destruction.  The majority and I agree that, based on *Handy*, an adverse inference charge is required here.  Thus, the jury would be instructed that it is permitted to "infer that the destroyed evidence would have been favorable to the defense" (CJI2d[NY] Adverse Inference - Destroyed Evidence).  Contrary to the pattern jury instructions in civil cases (1A NY PJI3d 1:77, 1:77.1 [2016]), this instruction would be without consideration of whether the jury concluded that the missing evidence was relevant (i.e., significant to its deliberations) and without consideration of whether the jury accepted the People's explanation for the destruction of the evidence, assuming the trial court allowed testimony on that subject (*see People v Cyrus*, 48 AD3d 150, 159, *lv denied* 10 NY3d 763 [police officer's testimony regarding content of videotape "likely inadmissible" under best evidence rule]).  I submit that this is a harsh and unwarranted remedy for what occurred here, but the majority and I agree that this is the remedy required by *Handy*.

Nevertheless, perhaps realizing the extraordinary burden on the People created by the breadth of the *Handy* rule, the Court of Appeals in *People v Durant* (26 NY3d 341) explained that, in *Handy*, the defendant had been charged with a crime in a felony complaint, the defendant had filed an omnibus motion demanding the evidence generated by electronic surveillance of the incident, and, "*[d]espite the defendant's demand for such evidence, the police destroyed the surveillance images sometime between the defendant's arraignment on the complaint and the filing of the indictment*" (26 NY3d at 349 [emphasis added]).  That explication of the facts is consistent with the interpretation given to *Handy* by the Committee on Criminal Jury Instructions in the adverse inference charge concerning destroyed evidence (*see* CJI2d[NY] Adverse Inference - Destroyed Evidence ["On or about (*date*), the defense requested that evidence.  *Thereafter*, the agents of the government destroyed it" (emphasis added)]).

Here, the record shows that the first demand by the defense for the surveillance video(s) was after the video(s) had been destroyed pursuant to the normal business practices of the City of Rochester Police Department.  Thus, as compelled by *Durant's* explanation of *Handy*, the duty to preserve the surveillance video(s) was not timely

triggered here and an adverse inference charge is not required.