NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2023-15T2

STATE OF NEW JERSEY,
 APPROVED FOR PUBLICATION
 AS REDACTED
 Plaintiff-Respondent, October 4, 2017

v. APPELLATE DIVISION

EUGENE RICHARDSON,

 Defendant-Appellant.
___________________________________

 Submitted May 16, 2017 – Decided October 4, 2017

 Before Judges Fisher, Ostrer and Vernoia.

 On appeal from the Superior Court of New
 Jersey, Law Division, Cumberland County,
 Indictment No. 14-07-0587.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Daniel V. Gautieri, Assistant
 Deputy Public Defender, of counsel and on
 the brief).

 Jennifer Webb-McRae, Cumberland County
 Prosecutor, attorney for respondent
 (Danielle R. Pennino, Assistant Prosecutor,
 of counsel and on the brief).

 The opinion of the court was delivered by

OSTRER, J.A.D.

 Lacking a valid driver's license, defendant was caught

giving a false name during a traffic stop for a motor vehicle

violation. The officer arrested defendant for hindering
apprehension and took him down to the station. While in the

booking room, the arresting officer searched defendant more

thoroughly. The officer testified that once defendant removed

his shoes he noticed a bulge in defendant's sock. He felt it.

Drugs, he thought, and asked defendant to remove his sock, which

revealed multiple packets of heroin.

 The booking room's two motion-sensitive video cameras

likely recorded the search. Yet, at defendant's jury trial on

the drug possession charge — the hindering charge was not

pursued — the State's case rested only on the officer's word.

That is because the State allowed the booking room tape to be

destroyed, despite defense counsel's prior written request that

the State preserve and produce it.

 The trial court denied his timely request to instruct the

jury that it could draw an adverse inference from the tape's

destruction. The trial court also denied defendant's pre-trial

request to bar evidence that defendant hindered apprehension.

The jury ultimately found defendant guilty of possessing heroin,

and the court sentenced defendant, a repetitive offender, to a

five-year term of imprisonment, with a two-year period of parole

ineligibility.

 Defendant presents two significant issues on appeal.

First, was defendant entitled to an adverse inference charge to

 2 A-2023-15T2
remedy the police's routine destruction of the video where the

defense expressly requested it be preserved? We conclude he

was. In particular, we hold that when the State refuses a

defendant's diligent pre-indictment request to preserve and

produce recordings, which the State or its law enforcement

agencies created and are directly relevant to adjudicating an

existing charge, the defendant is entitled to an adverse

inference charge. Second, did the court err in how it handled

the evidence of hindering apprehension? We conclude it did.

The evidence was inadmissible under N.J.R.E. 404(b) for its

proffered purpose and, in any event, the court's instruction was

inadequate. As these errors were not harmless, we reverse the

conviction, and do not reach defendant's challenge to his

sentence.

 Before addressing each issue presented on appeal, we

briefly review its procedural background.

 I.

 A.

 We begin with the destruction of evidence. Five days after

defendant's arrest, his attorney sent the prosecutor a discovery

demand, which asked the State to preserve and produce "all video

tapes, audio tapes or photographs, including but not limited to

police vehicle video tapes, 911 tapes, police and emergency

 3 A-2023-15T2
personal [sic] dispatch tapes, [and] booking room tapes . . . ."

(Emphasis added). The letter also "request[ed] that all

evidence be preserved, protected and produced," and that "the

State inform defense counsel in a timely fashion should the

State learn that any evidence . . . relevant to this case . . .

is about to destroyed . . . ."1 The State did not respond, nor

did it notify the police to preserve the booking room tapes.

 At trial, the defense did not elicit evidence regarding its

letter. Rather, it focused on the arresting officer's

independent decision not to preserve the recording. A sergeant

confirmed at trial that the cameras would have recorded a

suspect held in the bench area where defendant was searched.

However, the recordings were routinely overwritten after thirty

days.

 The arresting officer testified that he took no steps to

preserve the recording. He claimed he only requested

preservation of tapes to record incidents he did not see;

therefore, there was no reason for him to request the tape's

preservation. Yet, the sergeant testified officers could

request the preservation of tapes "for almost any reason," and

1
 Although neither party included the letter in the record on
appeal, we requested its production. In argument before the
trial court, the State did not dispute that defense counsel had
requested both the preservation and production of booking room
recordings.

 4 A-2023-15T2
often did. He added that officers typically requested videos of

incidents they did observe, noting that officers preserved tapes

to refresh their recollection at trial. As the arresting

officer did not request the video, it was erased thirty days

after defendant's arrest.

 The grand jury indicted defendant less than a month after

the erasure.2 By that point, there was no recording for the

State to produce. In justifying its inaction, the prosecutor

later contended her office had no responsibility to produce any

discovery pre-indictment, although she essentially conceded the

case had been referred to her office by the time defense counsel

served the letter requesting preservation of the booking room

recording.3 She said that defense counsel could have submitted

the discovery request directly to the police department. The

prosecutor also noted that the request was a "form letter," and

suggested that whether the recordings possessed evidence

material to the defense was speculative.

2
 Although the indictment charged possession with intent to
distribute, N.J.S.A. 2C:35-5(b)(3), as well as simple
possession, N.J.S.A. 2C:35-10(a)(1), the State dismissed the
former charge before trial.
3
 She stated in oral argument opposing defendant's pre-trial
motion to dismiss that when her office received the discovery
request, "The State d[id]n't know if it[] [was] going to keep
the case, or if it[] [was] going to dismiss the case."

 5 A-2023-15T2
 Defendant moved before trial to dismiss the indictment on

the ground that destruction of the videorecording violated his

right to due process. The court denied the motion, finding the

police did not act in bad faith.4 That decision is not before

us.

 The court reserved decision on defense counsel's

alternative request for an adverse inference jury instruction.

However, when counsel renewed the request at trial, a different

judge denied it.

 The court held there was no binding authority that required

the State to preserve the recordings in response to a letter to

the prosecutor's office. Noting the prior finding of no bad

faith, the judge stated he would have viewed the matter

differently had defense counsel sent the request directly to the

police. The judge stated that an adverse inference charge would

"tell[] the jury the police did something wrong," which the

court declined to do. When defense counsel renewed the request

before summations, the court added that defense counsel had

4
 A defendant must prove bad faith to establish a due process
violation based on destruction of potentially useful, as opposed
to exculpatory, evidence. See State v. Marshall, 123 N.J. 1,
109 (1991) (applying Arizona v. Youngblood, 488 U.S. 51, 57-58,
109 S. Ct. 333, 337, 102 L. Ed. 2d 281, 289 (1988)), cert.
denied, 507 U.S. 929, 113 S. Ct. 1306, 122 L. Ed. 2d 694 (1993);
State v. Mustaro, 411 N.J. Super. 91, 102-03 (App. Div. 2009).

 6 A-2023-15T2
thoroughly examined the issue at trial and could address it in

closing.

 The defense did. The absence of video was a major theme of

the short trial. The defense's sole witness was the sergeant in

charge of preserving booking room recordings. The defense

highlighted the absence of the surveillance footage, and focused

on the arresting officer's decision not to preserve the video,

despite the sergeant's testimony that officers often did. In

summation, the defense referred to cases in the news of police

misconduct and misrepresentations ultimately belied by

bystanders' recordings. The prosecutor responded that the

officer was not required to preserve the recording and that

there was no evidence of "foul play." The prosecutor contended

that reference to the lost recording was a "smoke screen" and

that the officer's observation of drugs met the State's burden.

 As his first point on appeal, defendant contends:

 THE TRIAL JUDGE ERRED IN FAILING TO PROVIDE
 JURORS WITH AN ADVERSE-INFERENCE OR CURATIVE
 INSTRUCTION AFTER THE STATE FAILED TO
 PRESERVE THE VIDEOTAPE OF THE ALLEGED CRIME,
 THEREBY ALLOWING CRITICAL EVIDENCE TO BE
 DESTROYED.

 B.

 The issue presented involves the State's pre-indictment

failure, despite defendant's request, to preserve obviously

relevant evidence that would have been discoverable post-

 7 A-2023-15T2
indictment. We conclude that the State's failure to do so

violated its implied obligations under the criminal discovery

rules and our caselaw, and warranted an adverse inference

instruction. Notably, our courts' power to order discovery is

not limited to the express terms of the automatic discovery

provisions of Rule 3:13-3(b). See State ex rel. A.B., 219 N.J.

542, 555 (2014). The courts have "the inherent power to order

discovery when justice so requires." Ibid. (internal quotation

marks and citation omitted). We draw support for our conclusion

from our Supreme Court's decisions requiring police officers to

preserve their interview notes before and after indictment. We

also look to persuasive authority of other state courts.

 1.

 Without doubt, defendant, post-indictment, would have been

entitled to discovery of the videorecording — had it been

preserved. According to our Rules, the State's obligation to

produce discovery in criminal cases arises after indictment,

unless a pre-indictment plea offer is made. See R. 3:13-3(a)

(pre-indictment discovery); R. 3:13-3(b)(1) (post-indictment

discovery by defendant). The disclosure obligation pertains to

"relevant material," R. 3:13-3(b)(1), and includes

videorecordings in the State's possession, R. 3:13-3(b)(1)(B).

To qualify as "relevant material," the evidence must have "'a

 8 A-2023-15T2
tendency in reason to prove or disprove [a] fact of consequence

to the determination of the action.'" State v. Gilchrist, 381

N.J. Super. 138, 146 (App. Div. 2005) (quoting N.J.R.E. 401). A

court must "focus upon 'the logical connection between the . . .

evidence and a fact in issue.'" Ibid. (quoting State v. Darby,

174 N.J. 509, 519 (2002)). The videotape certainly met that

standard. It recorded the alleged offense and would have tended

to prove or disprove the officer's testimony that defendant

possessed heroin in his sock.

 We read Rule 3:13-3(b)(1) to imply a duty to preserve

evidence pre-indictment, at least where the item is clearly

destined for post-indictment disclosure and a defendant timely

requests its preservation. To conclude otherwise would give the

State, as well as the police, free rein to destroy evidence that

may help a defendant, before indictment triggers automatic

disclosure. That would frustrate the broad pre-trial discovery

our Rules authorize and undermine the Rules' goals of "promoting

the search for truth," and "providing fair and just trials."

State v. Scoles, 214 N.J. 236, 251-52 (2013).

 In a series of decisions culminating in State v. W.B., 205

N.J. 588 (2011), the Supreme Court established that the State

must preserve, for later disclosure, the pre-indictment writings

and notes of a police officer under the prosecutor's

 9 A-2023-15T2
supervision. Id. at 608; see also State v. Branch, 182 N.J.

338, 367 n.10 (2005) (criticizing police officers' "seemingly

routine practice of destroying their contemporaneous notes of

witness interviews"); State v. Cook, 179 N.J. 533, 542 n.3

(2004). Once "a case is referred to the prosecutor following

arrest by a police officer as the initial process, or on a

complaint by a police officer, local law enforcement [becomes]

part of the prosecutor's office for discovery purposes." W.B.,

supra, 205 N.J. at 608 (citing R. 3:3-1; R. 3:4-1). The

obligation established in W.B. "cover[s] the gap between the

investigation and a defendant's indictment." State v. Dabas,

215 N.J. 114, 119 (2013) (citing W.B., supra, 205 N.J. at 608).

Upon indictment, the notes are disclosable as reports "in the

possession, custody and control of the prosecutor." W.B.,

supra, 205 N.J. at 608 (citing R. 3:13-3(c)(6), (7), and (8)

(2011), now found at R. 3:13-3(b)(1)(F), (G), and (H)).

 The Court's decision in W.B. responded to the widespread

police practice of destroying notes once an officer prepared a

formal report. See Dabas, supra, 215 N.J. at 118-19. The

officer in W.B. destroyed notes of interviews of the alleged

victim and the defendant in a sexual assault case. W.B., supra,

205 N.J. at 607. The Court explained that preserving writings

would guard against "the possibility of a misrecording" in the

 10 A-2023-15T2
subsequent report. Ibid. The Court grounded the requirement in

both the discovery rules and the right to confront witnesses:

 Yet the possibility of a misrecording is
 precisely why the notes must be maintained —
 a defendant, protected by the Confrontation
 Clause and our rules of discovery, is
 entitled to test whether the contemporaneous
 recording is accurate or the final report is
 inaccurate because of some inconsistency
 with a contemporaneous recordation. It is
 for the jury to decide the credibility of
 the contemporaneous or other recordation
 made while an investigation is on-going
 prior to preparation of a formal report.

 [Id. at 607-08.]

 Just as the State may not routinely destroy officers' notes

before they must be disclosed under Rule 3:13-3(b)(1), we

conclude the State may not destroy law enforcement's

videorecording of an offense, particularly when a defendant has

made a timely request to preserve it. The same confrontation

right at play in W.B. applies to the destruction of a

videorecording of an officer searching a defendant. The

recording enables a defendant to test the officer's version of

what transpired.

 The evidential value of the recordings may be substantial,

and even more reliable than an officer's notes. As the Court

stated, in reference to the recording of an alleged child abuse

victim's statement:

 11 A-2023-15T2
 [T]he videotape "convey[s] not only the
 exact words spoken by the child, but their
 finer shades of meaning through facial
 expressions, body movements and inflections
 of voice." In addition, a video recording
 creates an objective, reviewable record,
 enhances the reliability of confessions,
 protects police officers from false
 allegations, improves the overall quality of
 police work, and may well "preserve judicial
 resources" by discouraging defendants from
 raising frivolous pre-trial challenges to
 the admission of the child's statement.

 [State v. P.S., 202 N.J. 232, 253 (2010)
 (citations omitted).]

 As for remedy, the W.B. Court held, prospectively, that "if

notes of a law enforcement officer are lost or destroyed before

trial, a defendant, upon request, may be entitled to an adverse

inference charge molded, after conference with counsel, to the

facts of the case." 205 N.J. at 608-09. As the defendant in

W.B. neither requested an adverse inference charge at trial, nor

timely raised the issue before his new trial motion, the Court

declined to hold on appeal that the defendant was entitled to

the charge. Id. at 609. The Court added that an adverse

inference charge as a sanction for destruction of interview

notes may be "unnecessary where enough evidence is presented to

make [the] out-of-court statement trustworthy" without the

notes. Id. at 609 n.10 (citing P.S., supra, 202 N.J. at 254).

 However, the Court mandated an adverse inference charge

under the circumstances presented in Dabas, supra. The officer

 12 A-2023-15T2
in Dabas destroyed his lengthy pre-interview notes involving a

murder investigation. 215 N.J. at 123-24. The pre-interview

was followed by a brief recorded inculpatory interview

consisting of short answers to leading questions. Ibid. Upon

preparing his written report, the officer destroyed his pre-

interview notes a year after indictment. Id. at 123. The notes

were unquestionably subject to discovery by that time. The

Court held it was an abuse of discretion for the trial court to

refuse to give an adverse inference charge as requested by the

defendant. Id. at 141.

 The Court highlighted the impact of the officer's

destruction of notes on the truth-seeking process:

 The potential for unconscious, innocent
 self-editing in transferring words, sentence
 fragments, or full sentences into a final
 report is a real possibility. So is the
 potential for human error in the
 transposition of words from notes into a
 report. The meaning and context of [the
 defendant's] words as recorded in the notes
 may have been subject to differing
 interpretations where [the investigator] saw
 only one. Language nuances may have been
 lost as [the investigator] translated them
 into the final report. The slightest
 variation of a word or a phrase can either
 illuminate or obscure the meaning of a
 communication.

 [Id. at 138-39.]

In other words, destruction of notes deprives a defendant of

potentially useful evidence.

 13 A-2023-15T2
 "The adverse-inference charge is a remedy to balance the

scales of justice . . . ." Id. at 140. The Court drew

parallels to the adverse inference charge authorized in State v.

Clawans, 38 N.J. 162, 170-75 (1962), which involved a missing

witness, rather than missing evidence. Ibid. "[A] defendant

may be entitled to such a charge if the State fails to present a

witness who is within its control, unavailable to the defense,

and likely to give favorable testimony to the defendant." Ibid.

 The Court concluded that "[b]alancing the scales" required

an adverse inference charge consisting of instructions that (1)

"the State had a duty to produce the pre-interview notes to the

defense following the return of the indictment"; (2) "[b]ecause

the State made the notes unavailable, . . . the jury . . . was

permitted to draw an inference that the contents of the notes

were unfavorable to the State"; and (3) "[w]hether to draw such

an inference falls within the jury's discretion, after it gives

full consideration to the nature of the discovery violation, the

explanation given by the State for the violation, and any other

relevant factors that would bear on the issue." Id. at 141.5

5
 In response to the Court's decision in W.B., the Committee on
Model Criminal Jury Charges adopted the following instruction:

 You have heard testimony that
 failed to preserve (his/her/their) original
 notes in this case. Law enforcement
 (continued)

 14 A-2023-15T2
 Here, the case for such an adverse inference charge is just

as strong. Although this case involves the pre-indictment

destruction of evidence, defense counsel's timely request to

(continued)
 officers are required to preserve
 contemporaneous notes of their interviews
 and observations at the scene of a crime,
 even after producing their final reports. A
 defendant is entitled to test whether the
 officer has accurately recorded statements
 and observations that were made
 contemporaneously and also to test whether
 the final report and the officer's trial
 testimony are inaccurate because of some
 inconsistency with what the officer recorded
 at the scene. When the contemporaneous
 notes are not preserved, the defendant is
 deprived of this opportunity to test the
 accuracy of the contemporaneous notes, the
 final report, and the trial testimony.

 [Insert Parties Contentions, If Any]

 It is for you the jury to decide the
 credibility of the evidence presented. In
 evaluating the officer's credibility, you
 may infer that notes lost or destroyed by an
 officer before trial contained information
 unfavorable or inconsistent with that
 officer's trial testimony or final report.
 In deciding whether to draw this inference,
 you may consider all the evidence in the
 case, including any explanation given as to
 the circumstances under which the
 contemporaneous notes were lost or
 destroyed. In the end, however, the weight
 to be given to the testimony, and to the
 loss or destruction of the notes, is for
 you, and you alone, to decide.

 [Model Jury Charge (Criminal), "Failure of
 Police to Preserve Notes" (2011).]

 15 A-2023-15T2
preserve the evidence places this case in a category more like

Dabas than W.B. Just as the State in Dabas failed to preserve

and produce evidence, despite an explicit requirement, the State

here failed to preserve and produce the videorecording, despite

an explicit request. Also, as in Dabas, defendant timely

requested an adverse inference charge. In fact, the evidential

impact of the recording in this case is as great, if not greater

than in Dabas. Here, the recording memorialized the offense

itself and there is no corroborating evidence of the officer's

version of events.

 We recognize that trial courts are vested with the

discretion to fashion an appropriate sanction for a violation of

discovery obligations. Dabas, supra, 215 N.J. at 141; see also

R. 3:13-3(f). Trial courts also exercise broad discretion in

determining whether to comment on evidence during a jury

instruction, State v. Brims, 168 N.J. 297, 307 (2001), or to

grant a defendant's request for a particular jury charge. State

v. Green, 86 N.J. 281, 290 (1981).

 However, we are not obliged to defer to the exercise of

discretion that rests on an "impermissible basis." See Flagg v.

Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (internal

quotation marks and citation omitted). We will also reverse a

conviction where the court, which is obliged "to ensure that the

 16 A-2023-15T2
jurors receive accurate instructions on the law," delivers

"erroneous instructions on material issues," State v. Reddish,

181 N.J. 553, 613 (2004) (internal quotation marks and citations

omitted), or omits an instruction that is prejudicial to the

defendant "in light of the totality of the circumstances," see

State v. Marshall, 123 N.J. 1, 145 (1991) (internal quotation

marks and citations omitted), cert. denied, 507 U.S. 929, 113 S.

Ct. 1306, 122 L. Ed. 2d 694 (1993).

 The trial court here not only refused defendant's request

for an adverse inference charge, but denied any other remedy to

"balance the scales" that the State tilted by permitting the

recording's destruction. In finding no discovery violation, the

court presumed the State was not obliged to preserve the

recording; and the defense should have directed its request to

the police. Yet, as noted above, since the case was referred to

the prosecutor, the police and the prosecutor's office acted as

one. See W.B., supra, 205 N.J. at 608. In sum, the implied

obligation of Rule 3:13-3(b)(1); the Court's decisions in Dabas

and W.B.; and the defense's explicit request for preservation

all compelled the State, including the police, to preserve the

recording. As it failed to do so, an adverse inference charge

was warranted, so the jury could itself weigh "the explanation

 17 A-2023-15T2
given by the State for the violation." Dabas, supra, 215 N.J.

at 141.

 We reject the State's contention that defendant was obliged

to show the State acted in bad faith and the evidence was

exculpatory. Bad faith is an essential element of a due process

violation where the evidence is potentially useful. See

Marshall, supra, 123 N.J. at 109; State v. Knight, 145 N.J. 233,

245 (1996). On the other hand, "[s]uppression of requested

exculpatory evidence violates due process, regardless of the

prosecution's good faith." State v. Robertson, 438 N.J. Super.

47, 67 (App. Div. 2014), rev'd on other grounds, 228 N.J. 138

(2017). However, as the Court held in W.B. and Dabas, neither

proof of bad faith, nor a showing that evidence is exculpatory,

is essential to demonstrate a discovery violation or to justify

an adverse inference charge.6

 2.

 Our conclusion also finds support in the persuasive

decisions of other jurisdictions. They have found an adverse

inference charge was warranted by the State's destruction of

potentially useful evidence, even where bad faith was not shown.

6
 Bad faith is not a prerequisite for an adverse inference
charge in the civil context, as a sanction for spoliation of
evidence. See Jerista v. Murray, 185 N.J. 175, 202 (2005). We
can conceive of no reason to impose a more demanding standard
when a person's liberty is at stake in a criminal case.

 18 A-2023-15T2
See State v. Glissendorf, 329 P.3d 1049, 1051-53 (Ariz. 2014)

(adverse inference charge required where State destroys evidence

that has a "tendency to exonerate" or is "potentially useful");

Hammond v. State, 569 A.2d 81, 90 (Del. 1988) (defendant

entitled to adverse inference charge where State destroyed a

crashed automobile in a vehicular homicide case); Cost v. State,

10 A.3d 184, 196 (Md. 2010) (requiring adverse inference charge

where State destroyed "highly relevant" tangible evidence);

People v. Handy, 988 N.E.2d 879, 879 (N.Y. 2013) (stating, "when

a defendant in a criminal case, acting with due diligence,

demands evidence that is reasonably likely to be of material

importance, and that evidence has been destroyed by the State,

the defendant is entitled to an adverse inference charge");

People v. Butler, 33 N.Y.S.3d 602, 605 (App. Div. 2016)

(mandating adverse inference charge where police surveillance

video of crime was erased before a defense request).

 In Handy, supra, the defendant was charged with assaulting

sheriffs officers in a jail. 988 N.E.2d at 879. A jailhouse

recording system recorded at least part of the incident. Id. at

880. One of the officers viewed the video, reportedly decided

it recorded only a "very small part" of the incident, and

allowed the images to be routinely overwritten after thirty

days. Ibid. The tape was erased, despite the defendant's

 19 A-2023-15T2
demand for the evidence shortly after he was charged with a

felony complaint, but before indictment.7

 Adhering to Arizona v. Youngblood, 488 U.S. 51, 109 S. Ct.

333, 102 L. Ed. 2d 281 (1988), as does our Supreme Court, the

New York Court of Appeals declined to find a due process

violation. Yet, it held that the trial court was required to

grant defendant's request for an adverse inference charge. Id.

at 883. The New York court rejected the Appellate Division's

conclusion that the defendant could not establish the

recording's value, noting that the State's destruction "created

the need to speculate about its contents." Id. at 882.

Furthermore, requiring an adverse inference would "give[] the

7
 The timing of the defendant's request was elucidated in a
subsequent case, People v. Durant, 44 N.E.3d 173, 179 (N.Y.
2015) (stating, with reference to Handy, "[d]espite the
defendant's demand for such evidence, the police destroyed the
surveillance images sometime between the defendant's arraignment
on the complaint and the filing of the indictment"). However,
the New York Appellate Division rejected the notion that the
duty to preserve evidence is only triggered upon the defendant's
request, and instead required authorities to take whatever steps
necessary to preserve the relevant evidence "'when something
will . . . foreseeably lead to criminal prosecution.'" Butler,
supra, 33 N.Y.S.3d at 605 (quoting Handy, supra, 988 N.E.2d at
882-83). "To conclude that the duty to preserve is not
triggered until a request is made by the defendant would only
give an incentive to State agents to destroy the evidence before
the defendant has a chance to request the tapes." Ibid. On the
other hand, the New York model jury instruction, drafted after
Handy, addresses cases where government agents destroyed
evidence after the defense requested it. See id. at 607
(Curran, J., concurring).

 20 A-2023-15T2
State an incentive to avoid the destruction of evidence." Ibid.

The court emphasized that the jury was permitted, but not

required, to draw an inference in defendant's favor. Id. at

883; see also People v. Viruet, ___ N.E.2d ____ (N.Y. 2017)

(slip op. at 7-8) (extending the rule to a third party

recording, in the State's possession, of the murder the

defendant was charged with committing).8

 The court in Handy, supra, 988 N.E.2d at 882, relied on the

Maryland Court of Appeals' decision in Cost, supra. Cost

involved the destruction of tangible items of evidence in the

prison cell where the defendant allegedly stabbed a fellow

inmate through a slot between their two cells. 10 A.3d at 187-

88, 196. The items included the victim's allegedly blood-

stained linens and clothing. Id. at 196. The Maryland court

held that a "missing evidence" charge was mandated because

"[t]he evidence destroyed while in State custody was highly

8
 Much like the instruction outlined in Dabas, supra, 215 N.J. at
141, the New York model jury charge, adopted after Handy,
informs the jury of the State's obligation to preserve evidence,
but leaves it to the jury to determine whether to draw an
adverse inference. See CJI2d [NY] Destroyed Evidence. By
contrast, the Arizona model charge, referenced in Glissendorf,
supra, 329 P.3d at 1051, does not inform the jury that the State
is obliged to preserve the evidence, but it informs the jurors
that they may draw an adverse inference if they are not
satisfied with the State's explanation for its destruction. See
Rev. Ariz. Jury Inst. Stand Crim. 10 ("Lost, Destroyed, or
Unpreserved Evidence").

 21 A-2023-15T2
relevant to [the defendant's] case," and "could not be

considered cumulative, or tangential -- it goes to the heart of

the case." Ibid. Furthermore, the defendant's own argument to

the jury was no substitute for an instruction from the court,

which would have "more force and effect." Id. at 196-97

(internal quotation marks and citation omitted).

 The court held that fairness dictated a "missing evidence"

instruction favoring defendant, particularly since Maryland law

permits a "missing evidence" instruction against a defendant, to

allow a jury to infer consciousness of guilt. Id. at 191, 197.

The court recognized, "[f]or the judicial system to function

fairly, one party in a case cannot be permitted to gain an

unfair advantage through the destruction of evidence." Id. at

197.

 The court declined to require the instruction "as a matter

of course, whenever the defendant alleges non-production

evidence." Ibid. Instead, the court left it to the trial

court's discretion to refuse such a charge "where the destroyed

evidence was not so highly relevant, not the type of evidence

usually collected by the state, or not already in the state's

custody." Ibid. However, a trial court "abuses its discretion

when it denies a missing evidence instruction and the jury

instructions, taken as a whole, [do not] sufficiently protect

 22 A-2023-15T2
the defendant's rights and cover adequately the issues raised by

the evidence." Ibid. (internal quotation marks and citation

omitted).

 Consistent with this persuasive authority, we conclude the

trial court erred in rejecting defendant's request for an

adverse inference charge. The recordings were unquestionably

relevant, as they pertained to the very heart of the case.

Defendant exercised due diligence in requesting the preservation

and production of the recordings. Yet, the State and police,

acting as one, allowed the routine destruction of the recording.

 3.

 We conclude that the court's error denied defendant a fair

trial. This prosecution for simple drug possession rested

solely on the arresting officer's word. The State asked the

jury to believe that an on-the-scene search did not uncover the

drugs; a booking room search did. But, no one else in the

booking room could confirm that is what happened. While

officers often preserved recordings, the arresting officer chose

not to. The recording may have conclusively established

defendant's guilt if the officer was truthful, but it may have

conclusively exonerated defendant if the officer was not. A

jury instruction would likely have added weight to the defense

argument, by expressly permitting the jury to draw an adverse

 23 A-2023-15T2
inference from the destruction of the booking room recording.

See Marshall, supra, 123 N.J. at 145 (noting that a defense

counsel's arguments "can by no means serve as a substitute for

[proper] instructions by the court").

 It is possible, of course, that the jury may have found

defendant guilty, even if the court had delivered the requested

adverse inference charge. However, "mere possibilities . . . do

not render an error harmless." State v. Scott, 229 N.J. 469,

484 (2017). "[I]f there is a reasonable doubt as to whether the

error contributed to the verdict" — and we conclude there is

here — we shall not deem it harmless. See State v. J.R., 227

N.J. 393, 417 (2017). Therefore, the omission of the jury

instruction warrants reversal.

 II.

 [At the direction of the court, the
 published version of this opinion omits Part
 II, which addresses the admissibility of
 evidence of hindering apprehension under
 N.J.R.E. 404(b).]

 III.

 Given our disposition, we need not reach defendant's

argument that his sentence was excessive.

 Reversed. We do not retain jurisdiction.

 24 A-2023-15T2